**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER
(212) 373-3035

WRITER'S DIRECT FACSIMILE
(212) 492-0035

WRITER'S DIRECT E-MAIL ADDRESS
rtarlowe@paulweiss.com

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

April 8, 2019

**BY EMAIL / ECF**

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

*United States* v. *Anilesh Ahuja, et al.*,
18 Cr. 328 (KPF)

Dear Judge Failla:

We respectfully submit this letter seeking an order compelling the government to request, review and (as appropriate) produce relevant—and possibly exculpatory—emails sent and received by Amin Majidi, a cooperating witness, on his personal email account.[1]

As set out below, there can be no dispute that: (1) Majidi used his personal email account to communicate with alleged co-conspirators, including another cooperating witness, about the subject of the charged conspiracy (including specifically during the

---

[1] We previously served Majidi with a Rule 17(c) subpoena seeking relevant emails from his personal email account, and that subpoena is returnable on the first day of trial. To the extent the Court denies the instant motion to compel the government to obtain Majidi's emails, we respectfully request that the Court authorize the issuance of a Rule 17(c) subpoena requiring Majidi to produce those emails in advance of trial.

1

The Honorable Katherine Polk Failla

period of the charged conspiracy); and (2) the government, pursuant to its cooperation agreement with Majidi, has the power to require Majidi to produce those emails upon request. Under these circumstances, and whether pursuant to its obligations under Rule 16 of the Federal Rules of Criminal Procedure, *Giglio* v. *United States*, 405 U.S. 150 (1972), *Brady* v. *Maryland*, 373 U.S. 83 (1963), or the U.S. Attorney's Office's own internal discovery policy, we do not believe the government can credibly argue that it need not seek relevant emails from Majidi's personal email account. Nevertheless, the government has refused to commit to requesting Majidi's emails, much less producing them, and has advised us—while declining to provide any explanation—that it will not be in a position to tell us before approximately April 15, 2019, whether it intends to request that Majidi produce those emails.

**Background**

Amin Majidi is a cooperating witness who pled guilty pursuant to an October 31, 2018 cooperation agreement with the government. (A copy of that agreement is attached as Exhibit 1). The agreement expressly requires Majidi to produce to the government any documents requested of him. Specifically, Majidi agreed that, "upon request," he must provide to the government "any document, record, or other tangible evidence relating to matters about which [the U.S. Attorney's] Office or any designated law enforcement agency inquires of him." Majidi Cooperation Agreement at 2.

Based on information obtained from other sources, including the government's own discovery, it is clear that Majidi communicated with others, including other alleged co-conspirators (at least one of whom is also a cooperating witness), about the subject matter of the conspiracy via a personal email account. These emails contain, among other things, discussion of issues that go to the heart of this case (including PPI's month-end marking process), as well as impeachment material as to Majidi. Although we do not believe that the government disputes this, we are prepared to produce examples to the Court for *in camera* review.

Nevertheless, the government's Rule 16 production demonstrates that while Majidi produced to the government *other* documents (most likely in response to a grand jury subpoena), Majidi did not produce any emails from his personal account to the government, or at least the government has not produced any such emails to the defense.[2]

---

[2] Majidi likely received a grand jury subpoena mirroring those issued to Mr. Ahuja and his co-defendant, Jeremy Shor, which called for documents and communications with PPI employees from both "PPI and personal electronic devices . . . and [] PPI and personal electronic accounts (e.g., email, instant messenger)." Ahuja Grand Jury Subpoena at 2; *see id.* ("For the avoidance of doubt, this subpoena calls for documents from your personal files, your personal electronic devices, and your electronic accounts."). Indeed, both Mr. Ahuja and Shor in fact produced to the government

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine Polk Failla

Since February, we have made several inquiries of the government regarding emails from Majidi's personal email account. For example, in a March 6, 2019 email to the government following up on an earlier request, we asked whether the government had obtained or "intended to obtain and produce to the defense relevant emails from [Majidi's] personal email account." The government did not respond.

Three weeks later, on March 27, we sent the government another email seeking relevant email communications from Majidi's personal email account. The government informed us that it was not in "possession" of any of Majidi's personal emails and "decline[d] to discuss what we might request or obtain from Mr. Majidi in the future."

More recently, after we advised the government that we believed it had an obligation to request relevant emails from Majidi, we were told that the government "had not yet made a determination" as to whether it would seek emails from Majidi's Gmail account, and that it would not make that decision until "approximately" April 15. Further efforts to persuade the government to request the documents from Majidi—or at least to inform us of whether it intended to make the request—have not borne fruit.

### Argument

The government's position, including both its potential refusal to seek relevant emails from Majidi and its refusal even to communicate to us whether or not it intends to do so, is indefensible.

Under Rule 16, the government must disclose to the defense any documents that are "within the government's possession, custody or control" and are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). "A document is material if 'it could be used to counter the government's case or to bolster a defense.'" *United States* v. *Giffen*, 379 F. Supp. 2d 337, 342 (S.D.N.Y. 2004) (quoting *United States* v. *Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993)).

The government cannot credibly dispute that Majidi's email communications are material to the defense. Majidi was charged in the Indictment as a co-conspirator and is now cooperating with the government, and his communications with other PPI employees, including other alleged co-conspirators, are very likely to "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States* v. *Messina*, No. 11-CR-31 KAM, 2011 WL 3471511, at *3 (E.D.N.Y. Aug. 8, 2011) (quoting *United States* v *Stein*, 488 F. Supp. 2d 350, 356–57 (S.D.N.Y. 2007)). Among other things, these emails are relevant to key factual issues that will be in dispute at trial and may be used to impeach Majidi (and potentially other cooperating witnesses).

---

emails from their personal email accounts. The government's unwillingness to demand the same of its cooperating witnesses is odd.

3

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine Polk Failla

Likewise, the emails are within the government's possession, custody or control. *See Stein*, 488 F. Supp. 2d at 360–63. In *Stein*, the defendant sought documents in the possession of a third party that had entered into a deferred prosecution agreement with the government. The government argued that the requested documents were not in its "possession, custody, or control," even though it acknowledged that it possessed the "unqualified right" to request those documents. *Id.* at 360. Finding this position "untenable," Judge Kaplan held that the materials were within the control of the government and ordered their production. *Id.*; *cf. United States* v. *Tomasetta*, No. 10 Cr. 1205 (PAC), 2012 WL 896152, at *5 (S.D.N.Y. Mar. 16, 2012) (citing *Stein* for the proposition that where "the Government has a written agreement with the third party giving it the legal right to obtain documents upon demand . . . the Government may be in 'control' of such material," but distinguishing its facts given the lack of any such agreement).

Finally, the government cannot duck its obligations under Rule 16 by simply refusing to ask for relevant materials it knows are in the possession or control of a cooperating witness. In this respect, the government's unwillingness to ask for the emails from Majidi—whether or not it believes it has a legal obligation to do so—is inconsistent with the government's practice in other cases, and contrary to its own discovery policies.

In *United States* v. *Weaver*, for example, in opposing the defendant's Rule 16 motion, the government explained that: it had already made multiple requests, first verbally and then again in writing, from each cooperating witness, for "any materials in the witness' possession relevant to the investigation;" it had obtained such materials from the witnesses and provided them to the defense; and it was "not aware of any additional documents relevant to this case that are in the possession, custody or control *of cooperating witnesses*." United States' Opposition to Motion to Compel Discovery, No. 13 CR 120 (SJF/AKT), 2013 WL 8181504 (E.D.N.Y. Dec. 6, 2013) (emphasis added).[3] Here, the government cannot make that representation. To the contrary, the government in this case *is* aware of relevant documents in the possession, custody or control of its cooperating witness, but apparently has declined to ask for those documents.

Nor should the government be permitted to avoid its *Giglio* obligations by disavowing possession of relevant emails it knows to be in its cooperator's possession or control. Indeed, in stark contrast to the position the government has taken here, the U.S. Attorney's Office's own Discovery and Disclosure Policy recognizes that prosecutors should hold themselves to a more demanding disclosure standard when it comes to

---

[3]  Likewise, in *United States* v. *Treacy*, in opposing the defendant's motion to compel the government to obtain and review computer disks from his former employer that contained information from the hard drive of a cooperating witness, the government noted that it had already worked "in close consultation with [defense] counsel" and "jointly developed a list of terms to search the entire universe of documents within [the employer's] database, including the documents contained on the disks," which had resulted in the production of nearly 10,000 documents. Brief of United States, No. 08 Cr. 366 (RLC), at 4-5 (S.D.N.Y. Sept. 24, 2008), ECF No. 41.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Katherine Polk Failla

cooperating witnesses. As we pointed out to the government previously, the Policy states that the government has "a *substantial obligation to dig for* and disclose [*Giglio*] material" with respect to its cooperating witnesses.[4] Here, the government knows that relevant, possibly exculpatory and otherwise unproduced emails exist in the possession or control of its key cooperating witness, and yet it apparently has made no effort to even ask (much less "dig") for them.[5]

For all of these reasons, we respectfully request that the Court direct the government to obtain, review and (as appropriate) produce emails from Majidi's personal email account, or in the alternative, authorize the issuance of a Rule 17(c) subpoena requiring Majidi to produce such emails prior to trial.

Respectfully submitted,

*/s/ Richard C. Tarlowe*

Richard C. Tarlowe
Roberto Finzi

cc:   Counsel of Record

---

[4] U.S.A.O. S.D.N.Y. Discovery and Disclosure Policy (Oct. 15, 2010) at 8 (emphasis added), https://www.justice.gov/sites/default/files/usao/pages/attachments/2015/04/01/nys_discovery_policy.pdf (last accessed Apr. 8, 2019).

[5] To the extent Majidi failed to produce emails from his personal email account in response to a subpoena or informal request from the government, or that he took steps to delete or destroy those emails, those facts themselves would be *Giglio*, as would each of the unproduced emails withheld from the government.