PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON  (1946-1991)
RANDOLPH E. PAUL   (1946-1956)
SIMON H. RIFKIND   (1950-1995)
LOUIS S. WEISS     (1927-1950)
JOHN F. WHARTON    (1927-1977)

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(212) 373-3311

WRITER'S DIRECT FACSIMILE
(212) 492-0311

WRITER'S DIRECT E-MAIL ADDRESS
rfinzi@paulweiss.com

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
JUSTIN ANDERSON
ALLAN J. ARFFA
ROBERT A. ATKINS
DAVID J. BALL
SCOTT A. BARSHAY
PAUL M. BASTA
JOHN F. BAUGHMAN
J. STEVEN BAUGHMAN
LYNN B. BAYARD
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
DAVID M. BERNICK
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
ROBERT BRITTON
DAVID W. BROWN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JESSICA S. CAREY
DAVID CARMONA
JEANETTE K. CHAN
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
ROSS A. FIELDSTON
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
HARRIS FISCHMAN
MARTIN FLUMENBAUM
ANDREW J. FOLEY
ANDREW J. FORMAN*
HARRIS B. FREIDUS
CHRISTOPHER D. FREY
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
MATTHEW B. GOLDSTEIN
ROBERTO J. GONZALEZ*
CATHERINE L. GOODALL
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
BRIAN S. HERMANN
MICHELE HIRSHMAN
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
JAREN JANGHORBANI
BRIAN M. JANSON
JEH C. JOHNSON
MEREDITH J. KANE

JONATHAN S. KANTER
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
BRIAN KIM
KYLE J. KIMPLER
DAVID M. KLEIN
ALAN W. KORNBERG
DANIEL J. KRAMER
DAVID K. LAKHDHIR
JOHN E. LANGE
GREGORY F. LAUFER
BRIAN C. LAVIN
XIAOYU GREG LIU
LORETTA E. LYNCH
JEFFREY D. MARELL
MARCO V. MASOTTI
DAVID W. MAYO
ELIZABETH R. MCCOLM
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
LINDSAY B. PARKS
VALERIE E. RADWANER
JEFFREY J. RECHER
CARL L. REISNER
LORIN L. REISNER
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JUSTIN ROSENBERG
JACQUELINE P. RUBIN
CHARLES F. "RICK" RULE*
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
BRIAN SCRIVANI
KANNON K. SHANMUGAM*
DAVID R. SICULAR
AUDRA J. SOLOWAY
SCOTT M. SONTAG
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
RICHARD C. TARLOWE
MONICA K. THURMOND
DANIEL J. TOAL
CONRAD VAN LOGGERENBERG
LIZA M. VELAZQUEZ
MICHAEL VOGEL
RAMY J. WAHBEH
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
LINDSEY L. WIERSMA
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
JULIA TARVER MASON WOOD
JENNIFER H. WU
BETTY YAP*
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

June 29, 2019

**BY EMAIL / ECF**

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

*United States* v. *Anilesh Ahuja, et al.,*
S1 18 Cr. 328 (KPF)

Dear Judge Failla:

    We write in response to the government's June 27, 2019 letter seeking to preclude certain expert testimony that Mr. Ahuja intends to elicit as part of his defense. For reasons stated below, the government's request should be denied.

    By way of background, Mr. Ahuja has previously provided a substantial amount of disclosure related to anticipated expert testimony. In particular:

- Mr. Ahuja provided his initial expert disclosure on May 8, 2019. One week later, in a May 15, 2019 letter to the defense, the government claimed that Mr. Ahuja's initial disclosure failed to comply with Federal Rule of Criminal Procedure 16. Two days later, Mr. Ahuja, providing additional information, responded to each of the issues raised in the government's May 15 letter. The government never responded to this letter, and did not raise any concerns about the adequacy of Mr. Ahuja's disclosures, which specifically included

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Katherine Polk Failla

> supplemental responses relating to the Second, Third, and Fourth Opinions identified in the government's most recent letter to the Court.

- On May 24, 2019, Mr. Ahuja made an additional voluntary disclosure to the government identifying documents (beyond those that the government had already produced) that his proposed experts may rely on in their testimony.

- On June 23, 2019, we supplemented these disclosures by (i) providing charts and tables supporting the proposed expert opinions; (ii) identifying further documents that form the basis of the proposed expert opinions; and (iii) disclosing a small number of additional opinions we intend to offer in our defense.

As a result, and aside from its initial May 15 letter (which we responded to two days later), the government has not, until now, followed up on or otherwise objected to the particulars of Mr. Ahuja's proposed expert opinions.

Nonetheless, the government now contends that Mr. Ahuja intends to offer expert testimony about Mr. Ahuja's state of mind and other issues that would usurp the province of the jury. The government is wrong. Consistent with Your Honor's guidance at the May 28, 2019 pretrial conference, the defense does not intend to elicit opinions regarding anyone's state of mind. Nevertheless, and in an effort to sharpen the issues and/or address the government's concerns, set forth below are the current topics as to which Mr. Ahuja proposes to elicit testimony from an expert witness:

1. That during the second half of 2015 and through the first quarter of 2016, the composition of the assets in PPI's Mortgage Credit Fund portfolio moved away from legacy non-agency securities towards agency and other types of securities. The changes in the portfolio were based on significant sales of legacy non-agency securities. The sale of over-marked legacy non-agency securities realized (or "crystallized") previously unrealized losses.

2. The legacy non-agency market became increasingly illiquid in the second half of 2015 and early 2016. Selling large amounts of securities in an illiquid market results in large transaction costs, particularly when the positions are marked to the mid, and those costs would not in and of themselves be indicative of over-marked positions.

3. Between 2014 and June 2015, Mr. Nimberg's sales of agency securities were on average higher than their prior month-end (mid-point) mark.[1]

4. By the end of 2015, the performance of the New Issue Fund was such that it was highly unlikely that it would generate performance fees for PPI, and the

---

[1] The need for an expert opinion on this subject was not apparent until Mr. Nimberg testified about his alleged participation in mismarking.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Katherine Polk Failla

> management fees produced by a one-year extension would not have reasonably justified an extension of the initial term given the fund's operating costs.

5. PPI's disclosed strategy of managing the New Issue Fund based on a theory that subordinated tranches harbored unrecognized value that would be realized through certain actions was a valid and reasonable basis to extend the fund, and the strategy in fact "unlocked" significant value when the portfolio was sold as a package in the third quarter of 2016.

The first three opinions identified above involve analysis of the composition of PPI's portfolio, market conditions during the relevant time-period, and trading and activity by an alleged co-conspirator. Each of these areas plainly bears upon issues relevant to the jury's decision-making, and they all involve the application of specialized knowledge and expertise to technical data and information. While these opinions may ultimately help the jury assess issues bearing on Mr. Ahuja's intent and state of mind, none purports to tell the jury the state of mind that any individual, including Mr. Ahuja, possessed, nor how the jury should decide any ultimate issue.

With respect to the latter two opinions involving the New Issue Fund, these are also relevant to whether Mr. Ahuja was aware of, and participated in, any mismarking, and whether he acted with the intent to defraud investors. The government has attempted to prove that Mr. Ahuja participated in over-marking of the New Issue portfolio to generate extra performance fees and management fees. In the fourth proposed opinion, our expert will offer an analysis of management fees generated by the New Issue fund and whether it was even conceivable that the New Issue fund could generate a performance fee, with or without an extension.

The fifth opinion is likewise relevant to the jury's assessment of whether Mr. Ahuja acted in good faith. In particular, the expert will explain in layperson's terms the New Issue Fund's strategy, which consisted of pooling and securitizing newly originated loans, selling off the AAA tranches while retaining ownership of subordinate tranches, expecting to "harvest" the value of those tranches over time. The expert will testify about steps that PPI took to "unlock"[2] the value of these tranches in late 2015 through 2016, and will testify that the ultimate sale of the portfolio produced a gain relative to its "mark-to-market" value. This testimony is not being offered to prove that the positions were properly valued at any particular time; rather, it is being offered because it bears upon Mr. Ahuja's good faith in discussing an extension of the fund, and in particular the reasonableness of his belief that there was in fact "unlocked" value in the portfolio.

Finally, it also bears noting that the government itself put this last opinion in issue when it elicited testimony from Mr. Dole criticizing Mr. Ahuja's presentation to E&Y regarding unlocked value in the New Issue Fund. (June 6, 2019 Trial Tr. 455:3–15.) Mr. Ahuja should be permitted to respond to this testimony by showing that his views were proven correct when the New Issue Fund was liquidated a short time later. Otherwise, the jury would be left with the mistaken impression that Mr. Ahuja created an "analysis [] to

---

[2] Notably, this "unlocked" value refers to *existing* value that is realized at the time of a liquidation, not the value of the bonds based on their appreciation over time.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Katherine Polk Failla

reverse engineer that trading price in some way" (June 6, 2019 Trial Tr. 455:14–15) or attempted to mislead PPI's auditors. The jury cannot be precluded from hearing evidence that goes directly to Mr. Ahuja's honest belief in the truth of his representations. *See United States v. Brandt*, 196 F.2d 653, 657 (2d Cir. 1952) ("[S]ince [good faith] may be only inferentially proven . . . no events or actions which bear even remotely on its probability should be withdrawn from the jury unless the tangential and confusing elements interjected by such evidence clearly outweigh" its relevance (internal citation omitted)); *see also United States v. Litvak*, 808 F.3d 160, 190 (2d Cir. 2015) (abuse of discretion to exclude evidence supporting defendant's attempt to introduce reasonable doubt as to his intent to defraud).

       For the foregoing reasons, the Court should deny the government's request to preclude Mr. Ahuja's proposed expert testimony.

Respectfully,

Roberto Finzi
Richard C. Tarlowe

cc:    Counsel of Record