

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 3, 2019

BY CME/ECF

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    United States v. Anilesh Ahuja
               S1 18 Cr. 328 (KPF)

Dear Judge Failla:

      The Government respectfully writes in opposition to defendant Anilesh Ahuja's oral motion for bail pending appeal in the above-captioned matter. At the conclusion of his sentencing, Ahuja raised two issues that he argued entitled him to bail pending appeal: (a) James Nimberg's testimony that he participated in the charged mismarking scheme at Premium Point Investments ("Premium Point" or "PPI") by challenging up dealer marks he thought were legitimately too low while deliberately leaving unchallenged dealer marks he thought were too high, which Ahuja claims was a constructive amendment of, or prejudicial variance from, the Superseding Indictment (the "Indictment"); and (b) the limitations imposed by the Court on Ahuja's ability to conduct re-cross examination of certain witnesses. (Ahuja Sentencing Tr. 92-93.) For the reasons set forth below, Ahuja falls far short of meeting his burden of establishing the necessary "substantial question of law or fact" to justify bail pending appeal. The Court should deny Ahuja's request for bail.

      Under 18 U.S.C. § 3143, bail pending appeal is only appropriate where a defendant shows, by clear and convincing evidence, that he is not likely to flee or pose a danger to the community and that the appeal "raises a substantial question of law or fact likely to result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143. The Second Circuit has noted that a "substantial question . . . is one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (citing *United States v. Giancola*, 753 F.2d 898, 901 (11th Cir. 1985)). "The defendant has the burden of persuasion to rebut the presumption in favor of detention." *United States v. Levy*, No. S5 11 CR. 62 (PAC), 2014 WL 1483964, at *1 (S.D.N.Y. Apr. 9, 2014) (internal quotation marks and citations omitted).

Ahuja has failed to carry his burden in seeking bail because he has not identified any appellate issue raising a "substantial question of law or fact" that would result in a different outcome. The test is not whether an appeal is frivolous, but rather whether it is a "close question," and whether the issue, if "determined favorably to defendant . . . is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed." *Randell*, 761 F.2d at 125. Neither of the appellate issues that Ahuja has identified would result in a new trial, and both easily resolve in the Government's favor.

*First*, Nimberg's testimony presents no substantial question of law or fact for appeal. Nimberg testified, in substance and in relevant part, that he participated in the scheme to inflate the marks of securities held in PPI funds for the purpose of misleading investors about how the PPI funds were actually doing, including with Ahuja, Amin Majidi, Ashish Dole, Jeremy Shor, and Mark Ginsberg. (*E.g.* Trial Tr. 1529-31 (Nimberg: "I participated in a scheme to inflate marks, inflate bond prices which inflated the NAV which inflated the returns which we reported to investors.").) When asked how he personally inflated the agency securities he was responsible for marking, Nimberg testified, in substance and in relevant part, that his marks were knowingly inflated because he challenged up dealer marks he thought were legitimately too low while deliberately leaving unchallenged dealer marks he thought were too high. (Trial Tr. 1558-1561).[1]

The Court concluded during trial that Nimberg's testimony constituted neither a constructive amendment of, nor a prejudicial variance from, the Indictment. (Trial Tr. 1859 ("I do not believe that it is a constructive amendment. I don't believe it's a prejudicial variance.").) This finding was correct. "To prevail on a constructive amendment claim, a defendant must demonstrate that the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. D'amelio*, 683 F.3d 412, 416 (2012) (internal quotation marks omitted). Where the Second Circuit has found a constructive amendment, it has been because "the differences between the indictment and proof were extreme." *Id.* at 421 (distinguishing *Stirone v. United States*, 361 U.S. 212 (1960)).

Nimberg's testimony did not modify the core offense conduct alleged in the Indictment, which was that the defendants and others improperly inflated marks on securities held by PPI funds for the purpose of inflating investor returns, thereby deceiving investors into remaining with and paying fees to PPI. (*See* Indictment ¶ 17 (alleging that scheme involved "deceptively mismarking each month the value of certain securities held in [PPI] funds, and thus fraudulently inflating the NAV of those funds as reported to investors and potential investors"); *id.* ¶¶ 22-23 (alleging that "challenges" to dealer marks evolved into fraudulent mismarking)). Nor did Nimberg's testimony materially vary from the allegations in the Indictment. And even to the extent that it had, it still would not have prejudiced the defendants, as Jencks Act material for Nimberg that the Government provided to the defendants over a month before trial made clear that Nimberg "challenged up bonds that were undermarked and left overmarked." (Nimberg 3525-09.) As the Court noted in discussing Nimberg's testimony about challenges with the parties during trial, "[i]t's discussed in

---

[1] Nimberg also testified, in substance and in part, that the manipulation of the bid-ask spread was another way that the prices of bonds were inflated at PPI. (Trial Tr. 1561, 1630-32.)

the Indictment. [The defendants] had notice of it." (Trial Tr. 1857-58.) *See United States v. Milstein*, 401 F.3d 53, 71 (2d Cir. 2005) (prejudice has not occurred when defendant is on sufficient notice of trial proof). In his application for bail pending appeal Ahuja offers no explanation as to how Nimberg's testimony altered the terms of the Indictment or varied from them in a way that prejudiced him. It did neither.

Moreover, even if there were a close question as to whether Nimberg's testimony about his misuse of the challenge process constituted a constructive amendment or prejudicial variance — and there is not — Ahuja would still fall short of the standard for bail pending appeal, because there would still be no likelihood of a reversal of his conviction or the granting of a new trial. Notwithstanding its correct finding that Nimberg's testimony was neither a constructive amendment nor a prejudicial variance, prior to summations the Court also took the precautionary step of offering both defendants the opportunity to propose a jury instruction to the effect that the jury could not find a defendant guilty based on a finding that the defendant challenged up dealer marks that he believed were too low but left unchallenged dealer marks that he believed to be too high. (Trial Tr. 1858-64, 3447-48). Neither defendant elected to propose such an instruction. Moreover, in its summations, the Government did not argue that either defendant could be convicted based on a finding that the defendant challenged up dealer marks that he believed were too low but left unchallenged dealer marks that he believed to be too high. Given these circumstances and the plethora of proof of Ahuja's guilt that had nothing to do with Nimberg's testimony about his own decisions on when to challenge or leave unchallenged dealer marks, there is no plausible argument that had the Court handled the issue of Nimberg's testimony differently, a different outcome would have ensued for Ahuja at trial. Nimberg's testimony presents no substantial question for bail pending appeal.

*Second*, the Court's restriction on Ahuja's ability to conduct re-cross examination does not present a substantial question for bail pending appeal. Ahuja argues that the Court's restriction on re-cross examination is a substantial question because it "is novel or has not been decided by controlling precedent." (Ahuja Sentencing Tr. 94.) Contrary to this contention, the Second Circuit has repeatedly addressed a district court's ability to restrict cross or re-cross examination. It is well established that a trial court's limitations on cross examination are reviewed for abuse of discretion, *United States v. Vasquez*, 82 F.3d 574, 576 (2d Cir. 1996); *United States v. Rosa*, 11 F.3d 315, 335 (2d Cir. 1993), and "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross examination based on concerns about, among other things . . . interrogation that is repetitive or only marginally relevant," *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). *See also United States v. Estevez*, 735 F. App'x 746, 748 (2d Cir. May 29, 2018) (finding no abuse of district court's "broad" discretion in its decision to decline to allow re-cross examination of a Government witness, where topics to be covered were either not substantially new or particularly probative, or could be covered through the examination of another witness); *United States v. Choudhry*, 649 F. App'x 60, 61 (2d Cir. May 20, 2016) (finding no abuse of district court's discretion in its decision to deny re-cross examination of two Government witnesses following extensive cross examination in the first instance during which related questions could have been asked).

Ahuja's application for bail pending appeal contains no explanation of when or how the Court's restriction on re-cross examination was an abuse of discretion. Put simply, it was not. As

a threshold matter, the Court announced to the jury before the commencement of evidence and in the presence of all counsel that it "[did not] expect" there to be re-cross examination of witnesses during trial. (Trial Tr. 135). No party raised any objection or indeed made any comment about this ground rule. During redirect examination of the Government's first witness, Ashish Dole, the Court stated for the second time that its general rule was not to allow re-cross examination. (Trial Tr. 1232.) Ahuja then asked for leave to conduct re-cross on two areas of the redirect of Dole that Ahuja claimed were outside the scope of his cross examination of Dole, but to which he raised no objection: a conversation between Dole and Ahuja about "Shor's guys" or "Shor's boys," and Premium Point's compliance manual. (Trial Tr. 1220-22 (testimony about compliance manual); Tr. 1230 (testimony about "Shor's boys"); Tr. 1235-36 (request for re-cross).) In declining to allow re-cross examination, the Court specifically tied its denial to the issues on which Ahuja based his request, as to which he did not object but subsequently claimed were outside the scope of the cross examination and were elicited in a leading way. (Trial Tr. 1236 ("No recross, not for the reasons you describe."); Trial Tr. 1244 ("[W]hat you've identified for me as topics for recross are not appropriate topics for recross."); Trial Tr. 1578 ("On the issue of the request for reconsideration of re-cross examination, I'll just say again what I said last time, which was, I cannot exclude the possibility of re-cross examination, but as a matter of practice, I very, very rarely, if ever, allow it, and the proper bases for me earlier were not bases on which I would allow it. So I guess the parties can know that it exists, but it's very rarely permitted, and if that causes you to adjust your views with respect to government cross, that is fine by me."). The Court also offered the defendants the opportunity to conduct re-cross examination at various times during trial; the defendants elected not to do so. (Trial Tr. 529, 3273 ("[I]f you wish to have re-cross, I will permit it, but please understand that it may open up the door to additional re-direct, and I don't know that you want to do that.").)

In his oral application for bail, Ahuja cites no authority for the proposition that re-cross should have been permitted as a substitute for a decision not to object to certain questions during redirect on the basis that they were outside the scope or leading, let alone that a court's denial of re-cross for this purpose would constitute an abuse of discretion — particularly where the Court had already announced before the start of the evidence that it did not expect to allow re-cross. There is no colorable argument that the Court abused its discretion by following through on its own pre-announced intention not to permit re-cross.[2]

Even if there were a close question as to whether the Court abused its discretion in restricting Ahuja's ability to conduct re-cross examination — which there is not — it would not avail Ahuja because it would not render a reversal of Ahuja's conviction or the granting of a new trial for Ahuja likely. *See Randell*, 761 F.2d at 125. In his application for bail pending appeal Ahuja offers no basis for the notion that additional re-cross examination would have affected the

---

[2] There were also subsequent instances during the trial in which Ahuja put on the record his objection to the presumption against re-cross examination. (*See, e.g.*, Trial Tr. 2933 (Ahuja objecting to not being able to re-cross cooperating witness Amin Majidi on questions that were asked of him by counsel for co-defendant Jeremy Shor that Ahuja believed went beyond the scope of the direct examination).) Ahuja does not identify any of these instances in his application for bail pending appeal or explain how any application of this rule purportedly hindered his ability to mount a defense.

verdict against him, and none exists. The jury heard evidence against Ahuja and his co-defendant, Jeremy Shor, over a six-week period, including the testimony of multiple cooperating witnesses from both within and outside of Premium Point who spoke about non-overlapping instances in which Ahuja participated in the charged mismarking scheme; self-incriminating text messages written by Ahuja; written communications between and among Premium Point employees who participated in the charged fraud in which those employees contemporaneously complained that Ahuja was compelling them to mismark their securities; and evidence of the means by which Premium Point mismarked the securities in its portfolios and the degree of that mismarking. There is no plausible argument that additional re-cross would have changed the outcome against Ahuja. *See, e.g., United States v. Dhinsa*, 243 F.3d 635, 650 (2d Cir. 2001) ("The strength of the government's case against the defendant is probably the most critical factor in determining whether an error affected the verdict.") (internal quotation marks and citations omitted). The issue of re-cross examination does not present a substantial question that would justify bail pending appeal.

In sum, Ahuja has failed to satisfy the requirements for bail pending appeal under 18 U.S.C. § 3143, and bail should not be granted.

Respectfully submitted,

AUDREY STRAUSS
Attorney for the United States
Acting Under Authority Conferred by
28 U.S.C. § 515

   /s/
Andrea M. Griswold
Joshua A. Naftalis
Max Nicholas
Assistant United States Attorneys
(212) 637-1205/2310/1565