

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 19, 2020

BY CM/ECF

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    United States v. Anilesh Ahuja, et al.
                  S1 18 Cr. 328 (KPF)

Dear Judge Failla:

      The Government respectfully writes to advise the Court and the parties that certain representations it made to the Court during trial about the Government's communications with counsel for cooperating witness Amin Majidi prior to Majidi's guilty plea were wrong. While the Government's communications with Majidi's counsel were entirely proper, its recounting of those communications to the Court was partly inaccurate.[1]

      During trial, the Government produced to defense counsel a draft allocution that Majidi's counsel had sent to the Government in advance of Majidi's plea proceeding (the "Draft Allocution"). The Draft Allocution differed from the allocution that Majidi gave (the "Final Allocution"). The Court made clear that draft allocutions received from counsel for cooperating witnesses should have been produced to the defense earlier, pursuant to *United States v. Triumph Capital Group, Inc.*, 544 F.3d 149 (2d Cir. 2008), and directed the Government to review its attorney communications in this case for any additional materials that should be produced to the defense pursuant to *Triumph Capital*. (Tr. 479). That evening and the following day, Government trial counsel reviewed their archived emails for all communications with attorneys for witnesses in the case, including attorneys for cooperating witnesses, and produced any responsive documents to defense counsel. The Government filed a letter with the Court confirming that it had conducted

---

[1] This letter was in the process of being drafted when counsel for Jeremy Shor filed his June 19, 2020 motion for disclosures in this case. The Court has directed the Government to respond to Shor's motion by June 22, 2020. The Government expects that this letter and the enclosed exhibit may address Shor's motion in substantial part, but understands that there are parts of Shor's letter that will not be addressed herein. The Government respectfully requests that its deadline of June 22, 2020 to respond to those additional parts of Shor's letter be extended to June 24, 2020. This extension would facilitate the Government's ability to respond substantively to aspects of Shor's motion that were not addressed herein.

this review of communications with counsel for witnesses. (Docket 209). Government trial counsel did not include in their review internal emails that were strictly between Government attorneys.

The following week, on June 10, 2019, the Court inquired whether any of the Government counsel had had a conversation with Majidi's counsel about the Draft Allocution that impacted the substance of the Final Allocution. (Tr. 764). AUSA Naftalis, who handled Majidi's plea proceeding, recalled that he spoke with Majidi's counsel on the phone prior to the plea. (Tr. 767). He was not certain when the conversation occurred, but believed it may have been one day before the plea. (Tr. 767). The Court asked whether he recalled the substance of his communication with Majidi's counsel, and he initially answered, "I don't recall the substance – I don't recall the specifics." (Tr. 767). He then stated that "the substance was, which is what I say to all defense lawyers, which is, you've given us an allocution; we're only asking you to allocute to the elements and what's in the information . . . . We just typically say, you're a cooperator, you're going to be under oath, allocute to the elements, you're not testifying to the judge, this isn't your opportunity to blame others . . . . That's my general advice to lawyers. I certainly do not tell people what to say." (Tr. 767-68). AUSA Naftalis then confirmed that he did not have a specific recollection of his communication with Majidi's counsel, but that his "general practice" was to advise counsel to "just hit the elements." (Tr. 768).

The Court asked AUSA Naftalis whether he would have cared if Majidi had read the Draft Allocution into the record at his plea proceeding, and AUSA Naftalis responded, "No . . . . Would I care? No." (Tr. 768-69). The Court then asked whether AUSA Naftalis was representing as an officer of the Court that he in no way sought to "shape or modify" Majidi's allocution, and he responded, "Correct. I don't remember exactly what I said, but I would never suggest to a defense lawyer, this is what he should say or should not say." (Tr. 769).

After a pause during which he conferred with co-counsel, AUSA Naftalis clarified that "by 'shape,' I mean to do something improper. The direction would be consistent with what the person said in the proffers." (Tr. 769). The Court then asked, "You've said to me that it is your practice to have the cooperator hit the elements, is that correct?" (Tr. 769). AUSA Naftalis responded, "Correct." (Tr. 769). The Court asked whether he was saying that he would never give more specific direction than that, and he responded, "I mean, if something is factually wrong, I don't want someone allocuting that's wrong. But I don't have a specific recollection of shaping this one." (Tr. 769).

The Court asked AUSA Naftalis whether he or anyone from the Government had asked Majidi's counsel to change the names of anyone in Majidi's allocution, and he answered, "No." The Court asked whether he had asked Majidi's counsel to change the date in the allocution, and he responded, "Not that I can – I don't even recall." (Tr. 770). Consulting a document that had been created during trial to show the Court and all parties the differences between the Draft and Final allocutions, AUSA Naftalis said, "There is no change in the date of Mr. Majidi. The only change is that it's shorter, and as opposed to summarizing what . . . . I don't see any additions or subtractions." (Tr. 770). The Court pointed out that Jeremy Shor was not named in the Draft Allocution, but was named in the Final Allocution. (Tr. 770). AUSA Naftalis stated, "Just to be clear, [Shor's] name was in the [I]nformation, so this isn't like – this isn't new to anybody. I don't

recall saying, make sure you allocute to – you didn't include Shor in the first draft, put him in when you do it in Court. I don't recall that." (Tr. 770).

In March 2020, as a result of a search conducted by AUSA Naftalis in response to a FOIA request (discussed below), AUSA Naftalis identified an internal document that shows that he did discuss the changes to the Draft Allocution that are reflected in the Final Allocution with Majidi's counsel. The internal document is a redline of the Draft Allocution (the "Redline"), with proposed track changes that AUSA Naftalis made and then circulated in an email to the other two members of the Government team, AUSA Griswold and AUSA Nicholas, the day before Majidi's October 31, 2018 guilty plea. The Redline is attached hereto. While the Redline was an internal document that was never sent to Majidi's counsel, it matches the Final Allocution. The plain implication is that AUSA Naftalis must have discussed the proposed changes with Majidi's counsel prior to Majidi's plea. At the time of trial, none of the members of the Government team had a memory of the Redline.

The Redline makes clear that AUSA Naftalis's description to the Court of his communication with Majidi's counsel was partly inaccurate. In particular, his statements that he did not ask Majidi's counsel to include Shor's name in the plea allocution, and that he did not seek to modify Majidi's allocution, were incorrect. None of these statements was made with any intention of misleading the Court or the parties. As stated on the record, Mr. Naftalis did not have a specific recollection of the details of the conversation with Majidi's counsel. However, the description given to the Court of the substance of the conversation with Majidi's counsel was not accurate. The Government apologizes for the error.

AUSA Naftalis identified the Redline in March 2020 while searching through his internal emails to comply with a request filed by counsel for Ahuja, Richard Tarlowe, Esq., under the Freedom of Information Act ("FOIA") for, in substance, AUSA Naftalis's emails concerning, and drafts of, plea allocutions of Majidi. The FOIA request was received by our Office from the EOUSA FOIA/Privacy Act Unit on or about January 27, 2020, and forwarded by the Office's FOIA Specialist on that date to AUSAs Naftalis, Andrea Griswold, and Max Nicholas. AUSA Naftalis discussed the FOIA request with Associate U.S. Attorney McEnany, who exercises general supervision over FOIA requests, and, on January 28, 2020, sent Mr. McEnany a copy of the Court's order of June 10, 2019. Mr. McEnany asked AUSA Naftalis to pull together the relevant documents for review. AUSA Naftalis provided the responsive material, which included the Redline, to Mr. McEnany on March 9, 2020. Conversations between AUSA Naftalis and Mr. McEnany did not include a discussion regarding Mr. Naftalis's representations to the Court or the need to correct them. AUSA Naftalis did not bring the Redline to the attention of anyone else. Mr. McEnany requested the Office's FOIA Specialist to reformat and chronologically order the material to facilitate review for exemptions. Our Office's FOIA Specialist did reprocess the material but evidently not realizing that Mr. McEnany wanted to be notified to review the materials, sent the materials directly to the EOUSA FOIA/PA Unit, which processed them and released the non-exempt material. Of course, because the Redline shows that some of the statements made to the Court during trial had been incorrect, the Government should have corrected the record as soon as the Redline was discovered. The Redline should have been produced to the Court and the parties in March, in the context of the criminal case, irrespective of what may or may not be disclosable under FOIA.

After receiving the FOIA production, Mr. Tarlowe contacted AUSA Griswold on the matter on June 10, 2020. He advised that while Ahuja had received materials in response to his FOIA request, there appeared to be an attachment to an email (the Redline) that he had not received. Ahuja requested the attachment, which the Government has enclosed with this letter.

Regarding the Redline itself, each of the changes reflected in the Redline is completely consistent with Majidi's statements during proffer sessions, and Majidi's counsel confirmed during trial that Majidi was not pressured to change anything about his allocution. (Tr. 2053-54). However, the Redline is relevant to the Court's inquiry about how the Final Allocution came to differ from the Draft Allocution, and demonstrates that some of the answers provided to the Court during trial were incorrect, albeit unintentionally. Again, this should have been brought to the Court's and the parties' attention in March. While these mistakes were not made in bad faith, and while they did not prejudice the defendants at trial and do not implicate the verdict against either of them, they should not have happened.

    Respectfully submitted,

    AUDREY STRAUSS
    Attorney for the United States
    Acting Under Authority Conferred by
    28 U.S.C. § 515

    Joshua A. Naftalis
    Andrea M. Griswold
    Max Nicholas
    Assistant United States Attorneys
    (212) 637-2310/1205/1565

Enclosure

cc:    Counsel of record