

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 24, 2020

BY CM/ECF

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

   Re: United States v. Anilesh Ahuja, et al.
      S1 18 Cr. 328 (KPF)

Dear Judge Failla:

  The Government respectfully writes to respond to the letter filed by Jeremy Shor on behalf of both defendants in this case dated June 19, 2020 (the "Shor Letter"). The Government's June 19, 2020 letter (the "Government Letter") and the exhibit attached thereto (the "Redline") address the main issues raised in the Shor Letter, including the way in which Amin Majidi's plea allocution came to differ from a draft allocution that his counsel sent to the Government; the inaccuracy of statements made to the Court about that subject during trial; and the delay in producing the Redline. However, the Government Letter was not directly responsive to the Shor Letter because it was written largely before the Shor Letter was filed. In this supplemental letter, the Government addresses the Shor Letter's request for relief in the form of a hearing and additional document productions. Although we acknowledged in our earlier letter, and we reiterate now, that the mistakes described in the Government Letter should not have occurred, the Government respectfully submits that the request in the Shor Letter for a hearing should be denied. As described in more detail below, however, the Government agrees to undertake an additional search of its internal emails and files for categories of materials sought in the Shor Letter.

**Request for a Hearing**

  The Shor Letter requests that the Court order a hearing "so that defendants can discover the available facts (and any recollections refreshed based on those facts) regarding the evolution of Majidi's allocution and the government's disclosures regarding the same." (Shor Letter at 6). In light of the information provided in the Government Letter and the Redline, the Government respectfully submits that there is no need for a fact hearing regarding Majidi's allocution or the Government's disclosures surrounding it.

  Put most directly, there is no need for a fact hearing because there is no mystery about "the evolution of Majidi's allocution and the government's disclosures regarding the same." The

defendants have the Redline that reflects the changes that the Government proposed to Majidi's counsel and that Majidi ultimately incorporated into his allocution. The sequence of events described in the Government letter, and the contents of the Redline, make clear that AUSA Naftalis communicated the same changes that he proposed in the Redline – all of which were consistent with Majidi's proffers and none of which were improper – to Majidi's counsel, and that those changes were then incorporated into Majidi's allocution. The Court's colloquy with Majidi's counsel further makes clear that Majidi was not compelled or pressured to make any of those changes. The defendants know that the differences between the final Majidi allocution and his counsel's initial draft were prompted by the Government, and there is no need for additional fact finding.

The Shor letter makes reference to a "meeting held by the prosecution team" the day before Majidi's plea proceeding "to discuss Majidi's proposed allocution." (Shor Letter at 6). This does not provide a reason for a hearing. As a threshold matter, none of the prosecutors remember whether, one and a half years ago, they had any such meeting. The prosecutors exchanged emails about getting together to discuss "this [appearing to refer to the Majidi plea allocution] and some other stuff" (Shor Letter at 6) but none of them remembers whether or not they actually met, or if they did, what they discussed. More to the point, any such meeting must have yielded no additional proposed changes to the Majidi allocution, as the allocution matches the Redline that had already been created before any meeting was scheduled to occur. It is clear that the Redline reflects the changes that the Government proposed to Majidi's counsel.

There is also no need for additional fact finding about the Government's disclosures regarding Majidi's allocution. The sequence of those disclosures, including the mistakes that occurred, were described in the Government Letter. The Government has acknowledged that some of the representations AUSA Naftalis made to the Court about the communications he had with Majidi's counsel were inaccurate, although not deliberately so, and that the Redline should have been produced to the Court and parties in March 2020 irrespective of the process for producing documents in response to a Freedom of Information Act ("FOIA") request. The discussion in the Shor Letter about whether the work product doctrine could protect the Redline from disclosure in the FOIA context (Shor Letter at 7) is moot, because the Government has produced the Redline.

For the foregoing reasons, there is no cause for a hearing.

**Request for Additional Document Productions**

In addition to asking for a hearing, the defendants ask the Court to order the Government to undertake a wide-ranging search for materials relating to the substance or content of draft, proposed, or actual plea allocutions in this case, as well as materials reflecting "any meetings" regarding cooperator allocutions and all versions of any draft, proposed, or actual plea allocutions. (Shor Letter at 8). In light of the discovery of the Redline, the Government agrees to undertake a search of internal emails (including calendar invites), as well as internal paper and electronic files, for certain materials that would be responsive to this request. Specifically, the prosecutors on the trial team are searching all of their internal emails beginning two days prior to the plea proceedings for Majidi and cooperating witnesses Frank Dinucci and Ashish Dole, up to and including the date

of those plea proceedings,[1] for any materials responsive to the request in the Shor Letter (*i.e.* "internal or external communications regarding the substance or content of any draft, proposed, or actual plea allocution relating to the scheme alleged in this case; any meetings regarding cooperator allocutions in this case; and all versions of any draft, proposed, or actual plea allocutions relating to the scheme alleged in this case" (*see* Shor Letter at 8)), notwithstanding whether such materials were ever communicated to outside counsel or would be discoverable pursuant to *Triumph Capital*, *Brady*, *Giglio*, or on any other legal basis.[2]  The Government will produce any relevant materials resulting from this search by June 26, 2020.  The Government believes that searching for and producing to the Court and the parties internal communications of this kind is appropriate in light of the specific facts of this case; namely, the mistakes described in the Government Letter, irrespective of whether such communications are discoverable or can be used in any way by either defendant.  However, the Government does not believe that this search should be required to include phone logs, as requested in the Shor Letter.  To the extent they are maintained, phone logs would not reflect the substance of actual conversations, and expanding the search to include them is not warranted.

The Government accordingly opposes in part the requests for relief that the Shor letter seeks.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

/s/
Joshua A. Naftalis
Andrea M. Griswold
Max Nicholas
Assistant United States Attorneys
(212) 637-2310/1205/1565

Enclosure

cc:   Counsel of record

---

[1] The web-based backup to the Government's email server, which preserves deleted emails, extends back three years and therefore does not encompass the date of the Dinucci plea proceeding, which occurred in April 2017.  However, there is no reason to believe that any emails from April 2017 that would be responsive to the request in the Shor Letter were deleted and therefore would only be available on the web-based backup, as the Government has been able to locate emails from April 2017 relating to the Dinucci plea.  The Government will produce those emails to the defendants on Friday even though they go beyond the request in the Shor Letter.

[2] The prosecutors on the trial team did not handle Dole's plea proceeding.  With respect to Dole, the search will also include emails sent or received by the two prosecutors who handled that plea proceeding.