PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K. GARRISON  (1946-1991)
RANDOLPH E. PAUL   (1946-1956)
SIMON H. RIFKIND   (1950-1995)
LOUIS S. WEISS     (1927-1950)
JOHN F. WHARTON    (1927-1977)

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(212) 373-3035

WRITER'S DIRECT FACSIMILE
(212) 492-0035

WRITER'S DIRECT E-MAIL ADDRESS
rtarlowe@paulweiss.com

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
JUSTIN ANDERSON
ALLAN J. ARFFA
JONATHAN H. ASHTOR
ROBERT A. ATKINS
DAVID J. BALL
SCOTT A. BARSHAY
PAUL M. BASTA
J. STEVEN BAUGHMAN
LYNN B. BAYARD
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
DAVID M. BERNICK
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
ROBERT BRITTON
DAVID W. BROWN
SUSANNA M. BUERGEL
JESSICA S. CAREY
DAVID CARMONA
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
RACHAEL G. COFFEY
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
HARRIS FISCHMAN
ANDREW J. FOLEY
ANDREW J. FORMAN*
HARRIS B. FREIDUS
CHRISTOPHER D. FREY
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
MATTHEW B. GOLDSTEIN
ROBERTO J. GONZALEZ*
CATHERINE L. GOODALL
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
BRIAN S. HERMANN
MICHELE HIRSHMAN
ROBERT E. HOLO
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
JAREN JANGHORBANI
BRIAN M. JANSON
JEH C. JOHNSON
MEREDITH J. KANE
JONATHAN S. KANTER
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY

BRIAN KIM
KYLE J. KIMPLER
ALEXIA D. KORBERG
ALAN W. KORNBERG
DANIEL J. KRAMER
CAITH KUSHNER
DAVID K. LAKHDHIR
JOHN E. LANGE
GREGORY F. LAUFER
BRIAN C. LAVIN
XIAOYU GREG LIU
LORETTA E. LYNCH
JEFFREY D. MARELL
MARCO V. MASOTTI
DAVID W. MAYO
ELIZABETH R. MCCOLM
JEAN M. MCLOUGHLIN
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
LINDSAY B. PARKS
VALERIE E. RADWANER
JEFFREY J. RECHER
CARL L. REISNER
LORIN L. REISNER
JEANNIE S. RHEE*
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JUSTIN ROSENBERG
JACQUELINE P. RUBIN
CHARLES F. "RICK" RULE*
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
BRIAN SCRIVANI
KYLE T. SEIFRIED
KANNON K. SHANMUGAM*
DAVID R. SICULAR
AUDRA J. SOLOWAY
SCOTT M. SONTAG
SARAH STASNY
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
BRETTE TANNENBAUM
RICHARD C. TARLOWE
MONICA K. THURMOND
DANIEL J. TOAL
LAURA C. TURANO
CONRAD VAN LOGGERENBERG
LIZA M. VELAZQUEZ
MICHAEL VOGEL
RAMY J. WAHBEH
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
LINDSEY L. WIERSMA
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
AUSTIN WITT
MARK B. WLAZLO
JULIA TARVER MASON WOOD
JENNIFER H. WU
BETTY YAP*
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

**MEMO ENDORSED**

August 3, 2020

**BY EMAIL/ECF**

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      *United States* v. *Anilesh Ahuja*,
      18 Cr. 328 (KPF)

Dear Judge Failla:

    We respectfully submit this letter on behalf of Anilesh Ahuja and Jeremy Shor to address three disputed issues identified in the government's July 31, 2020 letter to the Court concerning the scope of the government's document searches.

    *First*, the government objects to any search of its communications (including emails and internal chats) from June 3, 2019 through June 11, 2019.  (July 31, 2020 Government Letter ("July 31 Gov't Letter"), at 4.)  We proposed that date range because it is during that period of time that:  (i) the government first produced to the defense the proposed allocution sent by Majidi's counsel (June 5, 2019); (ii) the Court directed the prosecution team to review its communications with counsel to ensure that all disclosable material had been produced (June 6, 2019); (iii) the government represented in writing that it had completed its review of all emails with counsel for witnesses, including cooperating

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Katherine Polk Failla

witnesses (June 8, 2019); and (iv) the Court questioned members of the prosecution team about the genesis of changes to the cooperators' proposed allocutions (June 10, 2019).

It is now known that certain representations made by the government in its June 8, 2019 letter and in response to the Court's questions on June 10, 2019 were inaccurate and/or incomplete. In addition to the facts that have come to light about the government's role in rewriting Majidi's proposed allocution, the government has recently produced previously undisclosed communications with counsel for cooperating witnesses that should have been part of the review described in the government's June 8, 2019 letter. The government has not explained why those documents were not previously produced, but has asserted that any incomplete or inaccurate information it provided to the Court was inadvertent. Under these circumstances, and given the obvious significance of the events that occurred between June 3 and June 11, 2019, it is hard to see how any reasonable effort to develop "a complete understanding of what happened" (July 24, 2020 Tr. 15:25) could exclude a review of communications from that period of time.

In resisting this search, the government states that "[t]hose emails would capture internal discussions between and among prosecutors relating to the then-ongoing trial that are not discoverable." (July 31 Gov't Letter at 4.) But the government has already agreed to multiple searches that include "internal discussions between and among prosecutors," and there is no reason to treat communications any differently simply because they took place during trial. The government cannot make a categorical determination that no communications from that time period are discoverable without reviewing them first.

The government's argument also overlooks the simple fact that, as with other aspects of the government's searches, the scope of the government's *search* need not be coterminous with the scope of its *production*. Thus, the fact that a particular search may capture documents that, upon review, are determined not to be subject to disclosure does not provide a reason to refrain from conducting a search to determine whether (and, if so, which) documents *are* subject to disclosure. The government's position is also contrary to its own approach recently in another case in this District; in that case, in an effort to ascertain the underlying facts concerning certain disclosure issues, the government reviewed (and disclosed to the Court and defendant) relevant internal communications among the trial team from mid-trial. (*See* 7/2/2020 Letter from John M. McEnany at 10–11, *United States* v. *Nejad*, 18 Cr. 224 (AJN), ECF 354.)

*Second*, the government also objects to the defendants' request that it produce documents identified during its review that reflect any suggestion, instruction, direction or preference that any communication not be sent by email or otherwise put in writing, that a communication take place in-person or by telephone, or that a method of communication other than email be used. In opposing this request, the government simply states that it "believes that this definition of *Brady* or *Giglio* material is substantially overbroad." (July 31 Gov't Letter at 4.) Even if *Brady* did not compel the production of such documents—and we believe it does—the point of this exercise is at least in part to determine what happened. The existing record raises legitimate questions about whether

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Katherine Polk Failla

there was a deliberate effort by the government to avoid putting things in writing to circumvent its disclosure obligations. (July 6, 2020 Letter at 14, ECF 385.)

The government calls this an "unfair inference" and states that "the invocation of the Government's occasional in-person or telephone conversations with other attorneys to raise the specter of bad faith is inappropriate." (July 16, 2020 Government Letter at 10, ECF 390.) The government is wrong, as the evidence revealed to date can fairly be read to raise at least the suspicion that certain communications were deliberately not committed to writing. Moreover, and in any event, the value of these communications lies at least in part in helping the parties and the Court reconstruct the facts, and the references to oral communications can at a minimum be used to refresh recollections or establish that oral communications took place, which may in and of itself be relevant regardless of motivation. Indeed, the Court stated at the July 24 conference that, "with respect to the issue of oral communications, I again need to see what else is out there." (July 24, 2020 Tr. 33:12–14.) Thus, if the government finds, in the course of its searches, that there are other documents "out there" on this issue, there is no legitimate reason for the government not to produce them.[1]

For these reasons, documents responsive to this request should be produced whether or not they fall within the government's *Brady* obligations. But, on this record, we submit that disclosure of such documents is also required under *Brady*, which "extends to evidence material to . . . the ability of a defendant to assert his constitutional rights," *Martinez* v. *United States*, 793 F.3d 533, 555 (6th Cir. 2015), *vacated on other grounds upon reh'g en banc*, 828 F.3d 451 (6th Cir. 2016), and therefore would include evidence (if any) of circumvention of disclosure obligations or failure to memorialize communications. Notably, in asserting that such communications fall outside of *Brady*, and do not support an inference of bad faith, the government overlooks that the government itself argued repeatedly to the jury that Mr. Ahuja's knowledge and bad faith could be inferred from his preference for one form of communication (text) over another (email). (*See*, *e.g.*, Trial Tr. 4680:5–4683:6.) Indeed, the government devoted a section of its slide deck used in summation to this argument, (*see* Government's Summation Slide Deck at 94–103), specifically highlighted an email in which Mr. Ahuja wrote, "just text me," (*id.* at 94, 100), and pointed to testimony that "Mr. Ahuja was picky about what he put in an email." (Trial Tr. 4682:9–10.) Mr. Ahuja moved unsuccessfully at trial to admit evidence of the government's email practices to rebut the government's arguments (July 3, 2019 Letter; Trial Tr. 4412:1–4413:9; *id*. 4476:4–10), but did so based on what we now know to be an incomplete record. To the extent the government identifies, during the course of its review, responsive documents that help complete that record and undercut arguments the government made at trial, the government should be required to produce them consistent with its *Brady* obligations.

---

[1]   To be clear, the defense is not suggesting that the government conduct separate searches for documents responsive to this request, but simply that the government produce any responsive documents identified in the course of the review it is otherwise conducting.

3

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Katherine Polk Failla

*Finally*, and as to the government's third objection, while the government has agreed to conduct searches relevant to the FOIA request and FOIA response, it has declined to extend those searches to the period from June 10, 2020 to June 19, 2020. On June 10, 2020, counsel for Mr. Ahuja reached out to the government to request the attachment to an email that had been included (without the attachment) in the FOIA production. That attachment turned out to be the redlined version of the proposed Majidi allocution with the government's edits. In opposing this request, the government suggests that this time period is irrelevant because "[t]he June 10, 2020 to June 19, 2020 date range comes after the date that EOUSA made its FOIA production to Ahuja's counsel, and thus also comes after the date that any decision was made regarding which materials the USAO would send to EOUSA for potential production." (July 31 Gov't Letter at 4.) But the delay between the defense request for the attachment on June 10 and the government's production of that document on June 19, which remains unexplained, is also relevant to the Court's inquiry.

The government also asserts that a search of its communications from June 10, 2020 to June 19, 2020 "would capture internal discussions constituting work product that are not discoverable." (July 31 Gov't Letter at 4.) But the fact that some of the communications captured during this review may not be subject to disclosure does not provide a basis to decline to conduct the review in the first place. In addition, to the extent certain of these communications might otherwise be subject to a claim of work product, a conditional discovery doctrine such as work product cannot overcome the fundamental constitutional due process commands embodied in the *Brady* doctrine. *See United States* v. *Gupta*, 848 F. Supp. 2d 491, 493, 496–97 (S.D.N.Y. 2012). Moreover, work product protection is not absolute, but yields where, as here, there is a "substantial need" for the information and it cannot be obtained elsewhere without "undue hardship." *United States* v. *Adlman*, 134 F.3d 1194, 1203 (2d Cir. 1998). Accordingly, the government's communications during the June 10, 2020 to June 19, 2020 time period should also be part of the government's review.

For all of these reasons, we respectfully submit that the Court direct the government to conduct each of the proposed searches described herein and opposed by the government.

Respectfully submitted,

*/s/ Richard Tarlowe*

Roberto Finzi
Richard C. Tarlowe

4

The Court issued an endorsement earlier today denying in part, Defendant Ahuja's and Shor's request for the Government to review internal communications from June 3 2019 to June 11, 2019.  (See Dkt. #396).  Counsel for Mr. Ahuja has now brought the Court's attention (via email) that the Court's ruling was premised on the belief that the Government's current proposal (outlined in its July 31, 2020 letter) already included searches of communications for the period between June 3 and June 11, 2019.  Counsel for Mr. Ahuja correctly points out that the searches the Government has committed to undertaking do not include that time period.  Accordingly, the Government is hereby ORDERED to search the emails of the members of the trial team for the time period of June 3, 2019 to June 11, 2019 for relevant communications.

Dated: August 4, 2020
      New York, New York

SO ORDERED.

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE