# Exhibit A

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER
(212) 373-3035

WRITER'S DIRECT FACSIMILE
(212) 492-0035

WRITER'S DIRECT E-MAIL ADDRESS
rtarlowe@paulweiss.com

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
JUSTIN ANDERSON
ALLAN J. ARFFA
JONATHAN H. ASHTOR
ROBERT A. ATKINS
DAVID J. BALL
SCOTT A. BARSHAY
PAUL M. BASTA
J. STEVEN BAUGHMAN
LYNN B. BAYARD
CRAIG A. BENSON
MARK S. BERGMAN
DAVID M. BERNICK
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
ROBERT BRITTON
DAVID W. BROWN
SUSANNA M. BUERGEL
JESSICA S. CAREY
DAVID CARMONA
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
RACHAEL G. COFFEY
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
THOMAS V. DE LA BASTIDE III
MEREDITH DEARBORN**
ARIEL J. DECKELBAUM
KAREN L. DUNN
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
HARRIS FISCHMAN
ANDREW J. FOLEY
ANDREW J. FORMAN*
HARRIS B. FREIDUS
CHRISTOPHER D. FREY
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
MATTHEW B. GOLDSTEIN
ROBERTO J. GONZALEZ*
CATHERINE L. GOODALL
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
BRIAN S. HERMANN
MICHELE HIRSHMAN
ROBERT E. HOLO
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
WILLIAM A. ISAACSON*
JAREN JANGHORBANI
BRIAN M. JANSON
JEH C. JOHNSON
MEREDITH J. KANE
JONATHAN S. KANTER
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY

BRIAN KIM
KYLE J. KIMPLER
ALEXIA D. KORBERG
ALAN W. KORNBERG
CAITH KUSHNER
DAVID K. LAKHDHIR
JOHN E. LANGE
GREGORY F. LAUFER
BRIAN C. LAVIN
XIAOYU GREG LIU
LORETTA E. LYNCH
JEFFREY D. MARELL
MARCO V. MASOTTI
DAVID W. MAYO
ELIZABETH R. MCCOLM
JEAN M. MCLOUGHLIN
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
LINDSAY B. PARKS
ANDREW M. PARLEN
CHARLES J. PESANT
JESSICA E. PHILLIPS*
VALERIE E. RADWANER
JEFFREY J. RECHER
CARL L. REISNER
LORIN L. REISNER
JEANNIE S. RHEE*
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JUSTIN ROSENBERG
JACQUELINE P. RUBIN
CHARLES F. "RICK" RULE*
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
BRIAN SCRIVANI
KYLE T. SEIFRIED
KANNON K. SHANMUGAM*
AUDRA J. SOLOWAY
SCOTT M. SONTAG
SARAH STASNY
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
BRETTE TANNENBAUM
RICHARD C. TARLOWE
MONICA K. THURMOND
DANIEL J. TOAL
LAURA C. TURANO
CONRAD VAN LOGGERENBERG
LIZA M. VELAZQUEZ
MICHAEL VOGEL
RAMY J. WAHBEH
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
LINDSEY L. WIERSMA
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
AUSTIN WITT
MARK B. WLAZLO
JULIA TARVER MASON WOOD
JENNIFER H. WU
BETTY YAP*
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR
†ADMITTED TO THE CALIFORNIA BAR

October 1, 2020

**By Email**

Andrea M. Griswold
Joshua A. Naftalis
Max Nicholas
Assistant United States Attorneys
United States Attorney's Office
   for the Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

              Re:     *United States* v. *Anilesh Ahuja, et al.*, 18 Cr. 328 (KPF)

Dear Andrea, Josh and Max:

        We write to ask that the government provide certain information, described more fully below, to assist us in reviewing the production we received last week.

1. It appears that at least some of the time stamps on the emails do not reflect ET times, and we are not able to discern the time zones from the face of the emails. For example, SDNY_PPI_00004 has a time stamp of 12:32:25 p.m., but refers to "going to court at 8:45"—suggesting that the email was sent before 8:45 a.m. ET. Please let us know if you are able to identify the time zones reflected in the time stamps in the email headers.

2. Certain emails produced by the government refer to specific voicemails received (but apparently not produced) by the government. Please let us know whether those voicemails exist. In particular, we note that:

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

AUSAs Andrea M. Griswold, Joshua A. Naftalis, Max Nicholas

    a. Dinucci's attorney sent an email to Andrea on April 4, 2017, at 8:27 p.m., "Andrea – just left you a voice message," to which Andrea responded, "Thanks, got your message." That voicemail message (which, based on subsequent communications, appears to relate to Dinucci's allocution) was not included in the government's production. We also note that the call log does not appear to include an entry for that call from Dinucci's lawyer.

    b. SDNY_PPI_00122 refers to a voicemail left for Andrea by counsel for Dinucci (presumably on June 10, 2019), which Andrea forwarded to Max. Neither the referenced voicemail, nor Andrea's communication forwarding it to Max (if any), was included in the production.

3. The May 2020 response to our FOIA request was produced by EOUSA. Last week's production, however, does not appear to include any communication evidencing the transmittal of documents from the U.S. Attorney's Office to EOUSA. Please let us know how the materials responsive to the FOIA request were transmitted to EOUSA and provide the cover letter (or email) under which they were transmitted.

4. The government's June 19, 2020 letter to the Court explained that Josh provided material responsive to our FOIA request to Associate U.S. Attorney McEnany on March 9, 2020, and that Mr. McEnany "requested the Office's FOIA Specialist to reformat and chronologically order the material to facilitate review for exemptions." Dkt. No. 368 at 3. SDNY_PPI_00181 appears to be the March 9, 2020 email from Josh to Mr. McEnany attaching responsive material. The government's production, however, does not include any communications between Mr. McEnany and the Office's FOIA Specialist.

    In addition, there are differences between the versions of certain documents attached to Josh's March 9, 2020 email to Mr. McEnany and the versions of those documents that were ultimately produced by EOUSA. For example, SDNY_PPI_00187 is an October 30, 2018 cover email from Josh to Andrea and Max enclosing the government's redline of the proposed Majidi allocution, but that is not the same version of this email that we received in the FOIA production. The version included in the FOIA production on May 27, 2020 included "Hodge, Darian (USANYS)" in the header, and contained no attachment enclosing the redlined allocution. The government's production does not indicate how the produced version came into the possession of EOUSA, why this header was in the version produced as part of the FOIA production but not in the version contained at SDNY_PPI_00187, or why the attachment was not included.

    Certain of the attachments to the March 9, 2020 email from Josh to Mr. McEnany (at pages SDNY_PPI_00193, 00198 and 00203) state "Image for this document EOUSA00114049_2 [or 52_2 or 55_2] is not exported." Please let us know the meaning of that language, and whether it reflects the original content of these pages when emailed on March 9, 2020 or an issue with the government's September 24, 2020 production. Finally, in light of the issues noted above, and to facilitate our

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

AUSAs Andrea M. Griswold, Joshua A. Naftalis, Max Nicholas

> review of these documents against the documents produced by EOUSA, please provide a native version of the March 9, 2020 email.

5. There are several unexplained redactions in the text messages between Josh and Andrea on June 11–12, 2020.  Please provide the redacted text or, at minimum, an explanation for the redactions.

6. There seem to be inconsistencies between the searches that were agreed to and the searches actually conducted.  In particular:

    a. In our August 3, 2020 email exchange, the parties agreed to use the terms "Tarlowe," "Ahuja," "PPI," "Majidi," "Rosenberg," "Naftalis," "Redline," and the FOIA file number to search and collect the emails of Mr. McEnany and the Information Management Specialist.  But your September 24 letter suggests that those individuals used significantly more limited terms, and that each custodian applied different terms than the other.  According to your letter, Mr. McEnany used the search terms "000663 or ('Released Records') /5/ TARLOW" (with the spelling later corrected to "TARLOWE"), and the Information Management Specialist used a different set of terms: "plea allocution," "October 29, 2018," "October 30, 2018," "October 31, 2018," "Anilesh Ahuja," "Amin Majidi," "Jeremy Shor," "Premium Point Investments," and "PPI."  Please perform the agreed-upon searches or explain why these changes were made.

    b. Your September 24 letter also states that Mr. McEnany searched his "retained" emails using the terms "Naftalis," "PPI," "Tarlowe," "FOIA," and "Ahuja," as a "check" on his search terms.  To the extent that search was limited to "retained" emails rather than all emails captured by the backup system, please explain why it was limited in that way.  Please also let us know whether the Information Management Specialist performed a similar "check" of his emails, and if so, what parameters he used.

    c. In your July 31, 2020 letter to the Court, you committed to reviewing all internal instant message chats on the USAO's instant messaging system between and among the trial team for the week preceding and the week following the guilty plea hearings for Dole, Majidi, and Dinucci, and to use search terms for certain other periods.  Dkt. 393 at 2.  Please confirm that AUSA Metzner's review included all instant messages, not limited by search terms, between and/or among the trial team and the supervisors, for the week preceding and the week following the guilty plea hearings for Dole, Majidi, and Dinucci.  Similarly, please confirm that AUSA Metzner reviewed all instant messages—not limited by keyword search terms—between and among the trial team for the period June 3–June 11, 2019.

7. Your September 24 letter states that you did not identify any additional materials for production on the government's internal instant messaging system.  However, it is not clear to us what universe of instant messages was available for review.  At the July 24, 2020 conference, Andrea stated that "at least one member of the trial

3

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

AUSAs Andrea M. Griswold, Joshua A. Naftalis, Max Nicholas

team's chats are completely backed up." July 24, 2020 Tr. 26:13-14.  And in your July 31, 2020 letter to the Court, you stated that if you learned in the course of conducting your searches that any materials were not preserved, you would notify the Court and the parties of that fact at the time of production.  Please confirm that all instant messages were in fact preserved for the relevant time periods for each of the three trial team members and the two supervisors.

8. Your September 24 letter states that the trial team reviewed their own call detail records for the date ranges surrounding the guilty pleas of the cooperators and identified calls with counsel for the cooperators.

    a. Our understanding, as reflected in our July 28, 2020 and August 5, 2020 emails to you, was that you would be reviewing call detail records in connection with the search of June 3 to June 11, 2019 communications ordered by the Court on August 5, 2020.  The emails you have produced from this period, as well as 3500 material prepared on June 7 and 8, 2019, reflect that there were calls with counsel for each of Majidi, Dole, and Dinucci, during this period.  Please confirm that you will review the call detail records for this period as part of your search.

    b. Please confirm which phone numbers were used in identifying communications with counsel for cooperators.  Specifically, please confirm that the search would capture calls involving any of the following: (i) office and cell phone numbers for cooperators' counsel; and (ii) office (including any trial room line) numbers, and work and personal cell phone numbers for the AUSAs.

9. SDNY_PPI_00079 and SDNY_PPI_00094 are June 8, 2019 and June 10, 2019 emails, respectively, that each enclose prior emails that were "Retrieved From Archive."  Our understanding is that this language reflects that those emails had at some point been deleted by the user.  Please let us know if our understanding is not accurate, and if those emails were at any point deleted, please identify when they were deleted and by whom.

10. Your September 24 letter states that text messages provided to AUSA Metzner that had been identified on a personal cell phone of a trial team AUSA were collected by a paralegal.  According to the letter, the paralegal, with the trial AUSA's assistance, conducted the agreed-upon word searches on text messages during relevant periods.

    a. Please confirm that the time periods searched included August 31, 2018 to December 31, 2018 (the four months surrounding Majidi's guilty plea), and June 3, 2019 to June 11, 2019.

    b. Please confirm that for the time periods of October 24, 2018 to November 6, 2018 (the two weeks surrounding Majidi's guilty plea) and June 3, 2019 to June 11, 2019, AUSA Metzner was provided with and reviewed all text messages from the trial AUSA's personal phone.  (Our understanding of the

4

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

AUSAs Andrea M. Griswold, Joshua A. Naftalis, Max Nicholas

government's July 31, 2020 letter, as endorsed by the Court on August 5, is that all text messages of the three trial AUSAs for the week preceding and the week following the three guilty pleas and for the June 3, 2019 to June 11, 2019 period would be reviewed.  Please confirm that to the extent that the trial team used personal cell phones for work purposes, all text messages from those devices for the relevant periods were included in the review.)

    c. Please clarify which text messages in the production were produced from work cell phones and which were produced from the personal cell phone.

11. The September 24 letter states that text messages were "extracted" from the trial team's cell phones, but that the Investigative Analysis professional was not able to "recover" text messages from those phones for 2017 or 2018.  It further states that text messages were reviewed from the trial team member's personal cell phone, but the Investigative Analysis professional was not able to "extract" the text messages from the personal cell phone.  Please explain why these sets of text messages were not able to be "recovered" and "extracted," respectively, and whether any text messages falling within the review periods had been deleted.

12. SDNY_PPI_00054 reflects a draft circulated by Max on June 7, 2019, of a letter that was ultimately sent to the Court and the defense on June 8, 2019.  Although we do not see any additional versions of the letter in the production, the draft circulated on June 7 and the letter ultimately submitted on June 8 appear to differ.  Please confirm whether any other versions of the letter were identified during AUSA Metzner's review, and if so, the bases for determining it was not appropriate to produce those versions.

13. Finally, could you please explain the criteria used to determine whether a particular document should be produced.

    a. Your September 24 letter states that the decision to produce any given document does not reflect a determination that the document constitutes *Brady*, *Giglio*, or *Triumph Capital* material, but rather that production of the specific document in the circumstances of this case and to aid the court's fact-finding inquiry is "appropriate."  Your letter does not explain what criteria were used to make that determination.

    b. The September 24 letter also does not indicate whether any potentially relevant documents were withheld based on a claim of work product or other privilege.  To the extent they were, please provide a log identifying the basis for withholding such documents.

Very truly yours,

*[signature]*

Richard C. Tarlowe
Roberto Finzi

cc: Counsel of Record

5