

Justin S. Weddle
212 - 997 - 5518 (o)
347 - 421 - 2062 (m)
jweddle@weddlelaw.com

January 22, 2021

**By Email**

Honorable Katherine Polk Failla
United States District Judge
40 Foley Square
New York, NY 10007

Re:   *United States v. Ahuja and Shor*, 18 Cr. 328 (KPF)

Dear Judge Failla:

On behalf of Jeremy Shor, we write regarding the Court's orders of January 13 and January 20, 2021 (ECF 424, 426), and the January 19, 2021 letter from Anilesh Ahuja (ECF 425). Mr. Shor joins in the letter submitted by Mr. Ahuja, recognizing that the Court has already denied in part and granted in part the requests therein. Taken in combination, the June 13 and June 20 orders find that "additional discovery and/or [an] evidentiary hearing" are not warranted, and instead direct the government to submit sworn statements from the three AUSAs who conducted the trial on seven enumerated topics.

On behalf of Mr. Shor, we are constrained to note our objection to the proposed procedure. The Court's adopted procedure affords the trial AUSAs a platform for presenting their explanations, without the core traditional mechanisms used to test proffered explanations in the context of a factual dispute, such as cross-examination and comparison with other evidence and witness's testimony. In addition, the procedure does not accomplish the fact-finding that is material to the motion we anticipate making. This is because our motion does not depend on whether there are or are not systemic disclosure problems, either with this case in particular or with the government generally (although to the extent there are such problems, they support our motions).[1] Our motion likely will seek three forms of relief: (i) dismissal based on the government's conduct, (ii) a new trial based on our inability to present evidence—or cross examination witnesses—on whether cooperators' sworn statements were shaped by the perceived desires of the prosecution, and with respect to Majidi, that his sworn

---

[1] We respectfully submit that the voluntary searches and disclosures made by the government were narrowly focused on one issue—government shaping of cooperator plea allocutions—and thus, even if they show no systemic disclosure failures beyond those relating to this issue, they do not provide a basis to say there are no broader disclosure issues in this case.


statement was written by a prosecutor, and (iii) sanctions based on the government's vexatious and unreasonable multiplication of the proceedings.

Recognizing that the Court has made the considered decision not to hold a hearing, we would like to state here, as an offer of proof, the additional development of the record that would be afforded by a hearing that is not provided by the written procedure ordered by the Court. At a hearing:

1. The defense would be able to explore in detail, and separately with each prosecutor, the substance of the communications referenced in the Court's questions. It is not clear that the Court's questions have asked for a full recitation of the substance and context surrounding each pertinent communication from each prosecutor-declarant. In addition, some of the Court's questions relate to prosecutor-declarant's recollections as of June 10, 2019, without also asking for their recollections (perhaps refreshed in the course of litigating these issues and identifying substantial additional documents relating to the events at issue) at various points in time since June 10, 2019, including their best recollection at the present time.

2. The defense would be able to question additional key witnesses to prosecutor-cooperator communications, such as each cooperator and his respective lawyers, special agents, or non-lawyer members of the government's team, such as paralegals, all of whom likely participated in non-privileged communications with the prosecutors, or were in a position to observe those communications, such as in the face-to-face pre-plea meetings the prosecutors requested of multiple cooperators' counsel. Just to take one example, it seems likely that an AUSA printed the re-draft of the Majidi allocution (not in redline, but in a clean copy), brought it to court, and handed it over so that Majidi could read it under oath. A number of witnesses are in a position to confirm or deny these events. More generally, the testimony of witnesses other than the three trial prosecutors is essential to supplement, confirm, or refute the representations to be made in response to the Court's questions.

3. The defense would be permitted to explore incorrect statements made by the prosecutors in the course of this litigation that sweep beyond the single incorrect statement admitted by the prosecution in its June 19, 2020 letter. The defense respectfully submits that the record does not show "the Court asked specific questions that one Assistant United States Attorney answered incorrectly, while two other Assistant United States Attorneys sat mute nearby." (ECF 424 at 3). Rather, each prosecutor made representations on the record and in writing (including the June 10, 2019 letter) during trial that either are incorrect or are inconsistent with the paper record that has been disclosed to date. Not


only has the government failed to correct the vast majority of these statements, but since the original FOIA production in May 2020, the government's letters and other representations have included a series of additional incorrect claims, most of which are not encompassed within the ordered declarations. Development of this factual record is important to:

  a. A full development of the facts regarding "what happened," which is important to the contemplated motion for a new trial. The motion for a new trial does not depend on the prosecutors' good faith (or lack thereof); however, given the Court's efforts to develop the factual record prior to deciding to preclude the defense from proving up the evolution of cooperators' testimony, the claimed facts regarding that evolution appears to have played an important role in the Court's decisionmaking.

  b. An evaluation of the credibility of witness testimony, as well as the claims previously asserted that the government acted in good faith.

  c. An evaluation of one of the claims that the defense has made in this case, and that likely will be renewed in future motion practice—that the case should be dismissed based on the government's conduct. Indeed, the revelation that the government had withheld Majidi's proposed allocution from the defense prompted just such a motion from the defendants. (The Court denied the motion based in part on its careful questioning of the prosecutors, which resulted in the prosecutors' provision of incorrect information). Such a motion cannot properly be evaluated without a full record of the government's conduct. We respectfully submit that to focus on one interaction on June 10, 2019, limits the factfinding in a manner that undercuts the defense's argument (supported by the record) that there are a number of disclosure failures and incorrect statements by the prosecutors, all of which bear on the contemplated motion.

  d. An evaluation of another claim that the defense may make in future motion practice, that is, a claim for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent power. Section 1927 provides for sanctions where a party "unreasonably and vexatiously" "multiplies the litigation." We respectfully submit that it is difficult to deny that the prosecutors "multiplied the litigation," but key factual questions will include *when* they can be said to have done so "unreasonably and vexatiously." We respectfully submit that the government's disclosure violations, and representations regarding their efforts to comply with their disclosure obligations, date to pretrial proceedings in this matter and may warrant the


calculation of sanctions dating to that period. But even if they do not, there are myriad other dates from which a sanctions order could be calculated, including:

i. the statements made in June 2019 by each of the trial AUSAs relating to disclosure failures;

ii. the government's June 10, 2019 letter certifying compliance with the Court's order;

iii. the government's January 16, 2020 claim to the Second Circuit, in response to the defense motion for bail pending appeal, that the defense argument was "deeply misleading" because it was premised on the theory (now demonstrated to be true) that "the final allocutions were somehow 'tailored' by the Government 'to hurt Shor'";

iv. the government's failure to correct the Second Circuit record and disclose withheld documents while the government was preparing for the February 4, 2020 oral argument on the bail motion, on April 27, 2020, when counsel for Mr. Shor requested the unsealing of the June 9, 2019 letter and its attachments relating to the allocution issue, or prior to May 4, 2020, when defense briefs were filed;

v. the government's failure to find and disclose as *Brady/Giglio* the materials withheld until included in a FOIA response: *in November 2019*, when the request was made; *after January 27, 2020*, when it was forwarded to the trial AUSAs and discussed with the Associate United States Attorney; *prior to February 4, 2020*, while the government was preparing for the Second Circuit oral argument; *in March 2020*, when one of the AUSAs allegedly discovered his email circulating a re-draft of Majidi's proposed allocution; *on April 27, 2020*, when the trial AUSAs received Shor's request to unseal (for purposes of appeal) the June 9, 2019 letter regarding the allocution issue; *prior to May 4, 2020*, when the defense filed appellate briefs; *prior to May 27, 2020*, when the first FOIA response was provided; *on June 10, 2020*, when the defense specifically requested the withheld attachment that turned out to be the re-draft of Majidi's allocution; *at any time prior to June 19, 2020*, when the re-draft was finally produced.

vi. the government's June 19, 2020 incorrect claim that its redraft of Majidi's allocution was "completely consistent with" Majidi's proffer statements.



vii. the government's failure, at various points in time to correct prior incorrect representations beyond the single statement corrected in the government's June 19, 2020 letter.

Among other things, determining each government representative's state of knowledge and diligence at each of these points in time is relevant to determining when they knew or should have known that statements made to the Court, the Second Circuit, and the defense were either incorrect or were made without proper diligence.

We respectfully note Mr. Shor's exception to the Court's decision.

Respectfully submitted,

*Justin S. Weddle*

Justin S. Weddle