**To:**      Nicholas, Max (USANYS)[MNicholas@usa.doj.gov]
**Cc:**      Griswold, Andrea (USANYS)[AGriswold@usa.doj.gov]; Pyun, Sarah (USANYS) [Contractor][SPyun@usa.doj.gov]
**From:**    Naftalis, Joshua (USANYS)
**Sent:**    Wed 6/5/2019 11:51:59 AM
**Subject:** Re: Quick thing for morning

Ok.  I can dig it out.

> On Jun 5, 2019, at 7:18 AM, Nicholas, Max (USANYS) <MNicholas@usa.doj.gov> wrote:
>
> I don't think it's actually proper Giglio but I think given posture we ought to produce.  We can produce and tell court we did it affirmatively even tho we don't consider it Giglio.  Otherwise they'll get it from Linder et al (seems like even if they fight she'd make them produce, like with Kehoe) and claim we hid it.
>
> Sent from my iPhone
>
>> On Jun 5, 2019, at 6:51 AM, Naftalis, Joshua (USANYS) <JNaftalis@usa.doj.gov> wrote:
>>
>> I think he did.  I don't consider it giglio.  Do you?
>>
>>> On Jun 5, 2019, at 12:45 AM, Nicholas, Max (USANYS) <MNicholas@usa.doj.gov> wrote:
>>>
>>> It just occurred to me that brian and Seth are the types who would have sent josh a draft plea allocution - we should check via email in the morning and if we have one, just produce it.
>>>
>>> Sent from my iPhone

**To:** Pyun, Sarah (USANYS) [Contractor][SPyun@usa.doj.gov]
**Cc:** Griswold, Andrea (USANYS)[AGriswold@usa.doj.gov]; Naftalis, Joshua (USANYS)[JNaftalis@usa.doj.gov]
**From:** Nicholas, Max (USANYS)
**Sent:** Wed 6/5/2019 12:32:25 PM
**Subject:** FW: Majidi Allocution
Allocution   -  Approved 1029.doc

Sarah, can you print off copies of this as well?  (not to mark).  We're going to court at 8:45.  Thanks!

**From:** Naftalis, Joshua (USANYS) <JNaftalis@usa.doj.gov>
**Sent:** Wednesday, June 05, 2019 8:29 AM
**To:** Griswold, Andrea (USANYS) <AGriswold@usa.doj.gov>; Nicholas, Max (USANYS) <MNicholas@usa.doj.gov>; Pyun, Sarah (USANYS) [Contractor] <SPyun@usa.doj.gov>; Barile, Nicholas (USANYS) [Contractor] <NBarile@usa.doj.gov>
**Subject:** FW: Majidi Allocution



**From:** Seth Rosenberg <rosenberg@clayro.com>
**Sent:** Monday, October 29, 2018 4:14 PM
**To:** Naftalis, Joshua (USANYS) <JNaftalis@usa.doj.gov>; Brian Linder <linder@clayro.com>
**Subject:** Majidi Allocution

## Proposed allocution attached.

--
**Seth L. Rosenberg**
Clayman & Rosenberg LLP
305 Madison Avenue
New York, NY 10165
(212) 922-1080
www.clayro.com

SDNY_PPI_00004

COUNT ONE AND COUNT THREE- CONSPIRACY AND SECURITIES FRAUD

Between 2014 and 2016, I was employed at Premium Point Investments as the portfolio manager for the mortgage credit hedge fund.  Premium Point Investments or PPI was an investment adviser located in Manhattan.  Among my roles as the portfolio manager was overseeing the work of a number of traders.  Each month the traders participated in the process of obtaining marks from third party brokers for the purpose of determining the value of the securities in the hedge fund.  Each trader under my supervision selected brokers to provide prices or marks for the securities they were responsible for trading.  PPI's administrative division communicated requests for marks to the selected brokers.  When the marks came in they were then used to calculate the hedge fund's net asset value each month.  The month-end net asset value of the fund was an important measure of the hedge fund's performance and was disseminated to investors and potential investors through the mail and wire communications.

At the direction of Neil Ahuja, CEO of PPI, I participated in a scheme to inflate the month-end net asset value of the hedge fund to encourage new investment and discourage investors from redeeming their investments in PPI.  This scheme accelerated in the second half of 2015, as the hedge fund's performance was deteriorating.  Specifically, I communicated to the traders under my supervision monthly performance targets set by Mr. Ahuja and I then pressured them to meet those targets.  Instead of the independent third-party valuation of the securities in the portfolio determining the net asset value, I agreed with Mr. Ahuja and others to let the performance target he set affect the value of the securities reported by PPI.  I knew that the resulting monthly net

asset value was inflated for the purpose of deceiving investors as to the hedge fund's performance.

SDNY_PPI_00006

COUNT TWO AND FOUR- CONSPIRACY AND WIRE FRAUD

Between 2014 and 2016, I participated in a scheme to defraud investors in the mortgage credit fund of PPI by inflating the month-end net asset value of the fund through the means I previously described. In pressuring traders under my supervision to meet the performance targets set by Mr. Ahuja, I often communicated with them by text message and email. I knew that the inflated net asset value was communicated to investors in an effort to encourage them to invest in the hedge fund or to discourage them from redeeming their investments.