J6JYAHU5  Page 2042

 1        MR. TARLOWE: We'll send them.
 2        MR. RUZUMNA: We have them all.
 3        THE COURT: Tonight.
 4        MR. RUZUMNA: Yes.
 5        THE COURT: Tonight.  It has to be.  I would be
 6   bringing him back this week.  I'm not going to bring him back
 7   six weeks into this -- eight weeks into this trial.  Then there
 8   is some clarity on that, and you'll tell me tomorrow where we
 9   are with that.
10        Mr. Tarlowe, something else?
11        MR. TARLOWE: Your Honor, just to add to the
12   discussion we had this morning about Mr. Nimberg's testimony
13   and about whether the scheme that he was testifying about was
14   the same scheme, I just want to add to that discussion that the
15   question on redirect by the government was, you testified on
16   direct and on cross that from about the middle of 2014 to the
17   middle of 2015, you engaged in a scheme to inflate the net
18   asset value of PPI's hedge funds.  Is that correct?
19        Yes.
20        Then the government said: You did that with Mr. Shor?
21        Yes.
22        You did that with Mr. Ahuja?
23        Yes.  Again, the prejudice that results from that,
24   perhaps among other things, is the jury is now given the
25   impression that he now has admitted into engaging in the

J6JYAHU5  Page 2043

 1   charged scheme with Mr. Ahuja, and I don't know think that he
 2   has.
 3        THE COURT: And I don't know that he's not, sir.  It's
 4   more than just the challenge issue.  I understand your point,
 5   and your record is made.
 6        MR. TARLOWE: I want to give more thought to it, but I
 7   think in addition to a multiple conspiracy issue, it may be a
 8   404(b) issue because if it's not the charged conduct, it's
 9   404(b).
10        THE COURT: Or it's inextricably intertwined or
11   background to the conspiracy.  I might be making that finding,
12   sir, but I understand your point.
13        Mr. Naftalis.
14        MR. NAFTALIS: Just to put on the record, we do think
15   that it's the same scheme.  I think they're sort of fighting
16   over means and methods.  We've got the two means and methods.
17   We understand that, but the scheme is to inflate.
18        We understand your Honor's ruling on one and the two.
19   We do not think -- the object is to commit securities fraud to
20   inflate the value.  The object is to commit wire fraud to
21   inflate the value.
22        The object is never charged to push up with two
23   challenges and not challenge down.  Then we're getting into --
24   there would be 50 conspiracies charged here because they're
25   sort of different permutations.  It is certainly one

J6JYAHU5  Page 2044

 1   conspiracy.
 2        MR. TARLOWE: Judge, the issue is how it's charged.
 3   So they certainly could have charged a scheme to inflate by
 4   various means, including but not limited to.  They didn't.
 5        THE COURT: But they did.
 6        MR. TARLOWE: It says the firm mismarked securities in
 7   two ways.  That's what the indictment says.
 8        THE COURT: Sure, but they also talk about the
 9   challenges as a precursor to the mismarking in two ways, and
10   that's what he's talking about.
11        MR. TARLOWE: It says the challenges evolved to
12   fraudulent mismarking, meaning the challenges were legitimate.
13   And then over time, it evolved to fraudulent mismarking.
14        THE COURT: I understand, sir.
15        Mr. Rosenberg here?
16        MR. ROSENBERG: I am, your Honor.
17        THE COURT: Mr. Rosenberg, I'm not sure you knew that
18   I wanted to speak with you, but perhaps you did because you are
19   here.  Mr. Rosenberg, would you come up to the podium.
20        Mr. Rosenberg, you are Mr. Majidi's counsel.  Am I not
21   correct?
22        MR. ROSENBERG: I am one of them.
23        THE COURT: I appreciate the clarification.
24        May I just have you go to the podium so I can hear
25   you, sir.

J6JYAHU5  Page 2045

 1        MR. ROSENBERG: Is this better?
 2        THE COURT: It is.  Thank you very much.
 3        I do not feel the need, sir, to put you under oath.  I
 4   appreciate that you're an officer of the court and you're not
 5   going to lie to me in response to the questions I'm asking you
 6   today.
 7        MR. ROSENBERG: I am not.
 8        THE COURT: If your colleagues at the bar think
 9   otherwise, they'll let me know, but I'm fine doing this.
10        Sir, the reason I wanted to speak to you is because
11   there's been a suggestion raised by the defendants that your
12   client's allocution before me was modified or was altered in
13   response to either government influence or government pressure
14   or government involvement in the preparation of the allocution.
15        I did notice, sir, that there was a draft allocution
16   that was received.  I've seen it.  Everyone has seen it.  And I
17   also know what was said before me.  And there was a difference.
18        So I'm wondering, if you could, without getting into
19   privileged communications that you might have had with your
20   client, tell me how that might have happened, if you have a
21   recollection.
22        MR. ROSENBERG: My recollection varies as to different
23   parts of this.
24        THE COURT: Okay.  Do you mean in terms of the
25   strength of your recollection?

J6JYAHU5     Page 2046

1       MR. ROSENBERG: Exactly.
2       THE COURT: Not in terms of the accuracy. Okay, sir.
3   Let me, please, hear from you.
4       MR. ROSENBERG: On October 29, my partner, Brian
5   Linder, prepared an initial draft of the allocution which I
6   reviewed on that day, and ultimately, we settled on a draft.
7   We sent it to the government.
8       THE COURT: Let me please stop you for a moment, sir.
9   It's Mr. Linder who did this?
10      MR. ROSENBERG: Linder, L-i-n-d-e-r.
11      THE COURT: I thought as much. Mr. Linder prepared
12   the draft.
13    To the best of your knowledge, was that done with the
14   assistance or participation of Mr. Majidi? Was he there in the
15   room? If you know.
16      MR. ROSENBERG: I think what I can say, Judge, is that
17   Mr. Majidi was familiar with the draft that we prepared.
18      THE COURT: "Familiar" in the sense that he read it?
19      MR. ROSENBERG: He was aware of it.
20      THE COURT: He was aware?
21      MR. ROSENBERG: Aware of the details of it.
22      THE COURT: Aware of the details. All right.
23   So that draft was then sent to whom, sir?
24      MR. ROSENBERG: It was sent to the government. I
25   don't remember who was on the email. It would in those days

J6JYAHU5     Page 2047

1   have been Mr. Naftalis.
2       THE COURT: Okay.
3       MR. ROSENBERG: I don't know if anyone else was
4   included on that email.
5       THE COURT: Sir, I have a recollection that the email
6   attachment was titled something to the effect of allocution
7   approved. I think the word "approved" was in it, and I don't
8   actually know who did the approving, whether it was you, sir,
9   or your client or Mr. Linder.
10      MR. ROSENBERG: I saw that. I saw that, and that
11   language has nothing to do with this case, whether Mr. Linder
12   started out on some other allocution somewhere or some other
13   document that had that on it, but to the best of my knowledge,
14   the notion that it was approved had nothing to do with this
15   case.
16      THE COURT: So, sir, this was sent to Mr. Naftalis or
17   someone at the government. Maybe we can cut to the heart of
18   it.
19    Mr. Naftalis, it was sent to you. Yes?
20      MR. NAFTALIS: Yes.
21      THE COURT: Sir, after it was sent, did you receive
22   any communications from the government?
23      MR. ROSENBERG: I received an email from Mr. Naftalis
24   asking if we could speak.
25      THE COURT: Were you able to speak with him?

J6JYAHU5     Page 2048

1       MR. ROSENBERG: I spoke with him. I have a very vague
2   recollection.
3       THE COURT: Of course.
4       MR. ROSENBERG: Of speaking with him later that day.
5       THE COURT: To the best of your recollection, whatever
6   you can recall, I'd be happy to hear.
7       MR. ROSENBERG: Well, the topic was certainly the
8   allocution. I've been over this a lot since I knew the Court
9   was interested in this, and I really would only be guessing at
10   what we talked about.
11    I've tried to sort it out as best I could, and I
12   really don't -- there is nothing I would be confident in saying
13   about that conversation. I just don't recall it.
14      THE COURT: Let me ask this, sir: If you were asked
15   by the government to modify the allocution in a way that you
16   thought was contrary to what your client had said, would you
17   have done it?
18      MR. ROSENBERG: Absolutely not.
19      THE COURT: Would you remember that conversation?
20      MR. ROSENBERG: I would.
21      THE COURT: If you were told that the allocution as
22   drafted was going to result in the termination of the
23   cooperation relationship, would you have remembered that
24   conversation?
25      MR. ROSENBERG: Of course.

J6JYAHU5     Page 2049

1       THE COURT: Why I'm asking the question -- no surprise
2   here -- is I'm trying to figure out if your conversation was so
3   benign that you can't remember it.
4       MR. ROSENBERG: Again, I think it was about details of
5   the allocution. There was nothing ominous about it. Certainly
6   no one ever suggested that Mr. Majidi allocute to something
7   that had not already been disclosed as the general theme and
8   facts of his involvement in this matter.
9       THE COURT: Sir, my recollection of one difference
10   between the allocution that was sent to Mr. Naftalis and the
11   allocution that was given to me, perhaps a day or so later, was
12   the introduction of Mr. Shor's name.
13    I don't know whether that was -- if that is the
14   product of communications you had with your client, I don't
15   want to know about your privileged communications. But if the
16   government said to you, in substance, hey, what about Jeremy
17   Shor, I think I'd like to know that.
18      MR. ROSENBERG: It is possible.
19      THE COURT: You have no recollection?
20      MR. ROSENBERG: I have no recollection of it. I think
21   it may be appropriate to say that in preparing the draft of the
22   allocution that we sent to the government, it wasn't meant to
23   exhaust Mr. Majidi's knowledge of the facts.
24    It was a conspiracy was alleged. Our client had to
25   have conspired with someone. I think we included Mr. Ahuja as

J6JYAHU5                                                          Page 2050

 1  a coconspirator and listed with Mr. Ahuga and others attempting
 2  to make it legally sufficient. That would typically be the way
 3  we would have prepared an allocution. We wouldn't have gone
 4  beyond something of that sort.
 5       THE COURT: Is there a possibility, sir, that -- by
 6  the way, I'm describing no nefarious motives to anything. I'm
 7  just really trying to understand what happened.
 8       After you had the discussions with Mr. Naftalis, did
 9  you have additional discussions with either Mr. Linder or with
10  your client about the allocution?
11       MR. ROSENBERG: I don't recall specific conversations
12  with Mr. Linder, but I'm sure I had them.
13       THE COURT: I'll try it this way: Would you agree
14  with me, sir, that there is a difference between the approved
15  allocution that was sent to the government and the words that
16  were said by your client before me at the actual guilty plea?
17       MR. ROSENBERG: There is.
18       THE COURT: Can you attribute the alterations between
19  the two allocutions to conversations with the government as
20  distinguished from conversations that you had with your
21  colleagues, conversations that you had with your client?
22       MR. ROSENBERG: It's hard for me to answer it in quite
23  that way. Maybe I can approach it differently.
24       THE COURT: Of course.
25       MR. ROSENBERG: I have no recollection of preparing

J6JYAHU5                                                          Page 2051

 1  myself the allocution that Mr. Majidi delivered to you.
 2       THE COURT: Was Mr. Majidi reading from notes when he
 3  spoke with me?
 4       MR. ROSENBERG: He was.
 5       THE COURT: Did he read them word for word?
 6       MR. ROSENBERG: He did.
 7       THE COURT: He did. All right. There were a few
 8  things missing as you'll recall. We had to talk about the
 9  wires. I think there were follow-up questions about the wires.
10       MR. ROSENBERG: I'm sorry. I don't recall that.
11       THE COURT: That's fine.
12       Sir, the allocution that I'm calling the approved
13  allocution, the one that was transmitted to the government --
14  your client was aware of the fact of its transmission to the
15  government?
16       MR. ROSENBERG: Yes.
17       THE COURT: Was he aware of what actually was
18  transmitted to the government?
19       MR. ROSENBERG: To the extent that he would have been
20  told that what he was aware of was being sent to the
21  government.
22       THE COURT: Was he copied on the transmittal, sir, or
23  b.c.c.'d on the transmittal, sir? If you know.
24       MR. ROSENBERG: I don't believe so.
25       THE COURT: Did you review the document before it went

J6JYAHU5                                                          Page 2052

 1  to the government?
 2       MR. ROSENBERG: Yes.
 3       THE COURT: Yes, you saw --
 4       MR. ROSENBERG: He either saw it or it was read to
 5  him.
 6       THE COURT: One moment, please. Excuse me.
 7       I'm going to ask the question again. I'm not sure I'm
 8  going to be more successful this time.
 9       Would Mr. Majidi have changed that language on his
10  own?
11       MR. ROSENBERG: He would not.
12       THE COURT: He would have changed it based on
13  discussions with you? No. The language would have been
14  changed because of discussions that he had with you?
15       MR. ROSENBERG: If you're talking about the changes
16  that occurred between the draft that was sent to the government
17  and the allocution that was read?
18       THE COURT: Yes, sir.
19       MR. ROSENBERG: He was not involved in anything that
20  led to those changes.
21       THE COURT: "He was not involved in anything that led
22  to those changes." That suggests to me that changes between
23  the two allocutions were the product of your discussions with
24  the government.
25       MR. ROSENBERG: Again --

J6JYAHU5                                                          Page 2053

 1       THE COURT: If you know.
 2       MR. ROSENBERG: It would have to be the case. I don't
 3  have a recollection of that conversation.
 4       THE COURT: The document that you sent to the
 5  government, the approved allocution -- is it consistent with
 6  what your client said in proffer sessions with the government?
 7       MR. ROSENBERG: It is.
 8       THE COURT: Is it accurate?
 9       MR. ROSENBERG: It is.
10       THE COURT: Based on what your client said?
11       MR. ROSENBERG: It is.
12       THE COURT: I'm making no findings as to his
13  credibility.
14       MR. ROSENBERG: It is.
15       THE COURT: What he said before me at the plea
16  proceeding -- was that also in accordance with the statements
17  he had made to the government in his proffer sessions?
18       MR. ROSENBERG: It was.
19       THE COURT: Was it accurate to the best of your
20  understanding?
21       MR. ROSENBERG: It was.
22       THE COURT: Did you feel in any way compelled,
23  pressured, encouraged, influenced by government to change the
24  language of the allocution? I'll go through each of those
25  verbs, and I'll add some more if you'd like. I'll start with

J6JYAHU5 Page 2054

the easiest.
    Were you forced by the government to change the allocution?
    MR. ROSENBERG: No.
    THE COURT: Were you pressured by the government to change the allocution?
    MR. ROSENBERG: No.
    THE COURT: Were you in fear of retribution from the government if you didn't change the allocution?
    MR. ROSENBERG: No.
    THE COURT: Were you encouraged by the government to change the allocution?
    MR. ROSENBERG: As best I can figure it out, I think the government thought that the allocution -- there's a vague recollection that they thought it was too specific in the introductory part, and I can only conclude that there was some issue having to do with the inclusion of Mr. Shor's name.
    THE COURT: One moment, please. I just want to see that.
    You're saying you can only conclude. I only want to know what you can recall. Please don't be estimating or guessing.
    MR. ROSENBERG: No. I'm trying to be very specific about my recollection.
    THE COURT: I appreciate that, sir. Thank you.

J6JYAHU5 Page 2055

    So what is the best of your recollection as you stand before me now?
    MR. ROSENBERG: I have a very, very, very vague recollection of the initial part of our draft or what was submitted to them being overly complicated or overly specific or whatever.
    THE COURT: Not that it was incorrect?
    MR. ROSENBERG: No. No. No. No.
    THE COURT: But that it was too detailed?
    MR. ROSENBERG: Yes. Something along those lines.
    THE COURT: Did you ever hear the expression "hit the elements"?
    MR. ROSENBERG: Sure.
    THE COURT: Is that something you recall in the context of this conversation?
    MR. ROSENBERG: No. I don't recall this conversation in anything like that detail. I'm trying to make clear.
    THE COURT: I know, and I'm trying to get you to remember more of it.
    MR. ROSENBERG: I'm not holding back. I'm trying to get it right.
    THE COURT: That's all I can ask for, sir.
    Let me do this. I'm going to ask you to just stay there for a second. I want to just talk to counsel at sidebar. If there is some question that they think I should have asked

J6JYAHU5 Page 2056

that I think as well should be asked, I'll ask that. Just give us a moment, please. Thank you, sir.
    MR. ROSENBERG: Of course.
    (Continued on next page)

J6JYAHU5 Page 2057

    (At sidebar)
    THE COURT: Okay. Is there any question that I haven't asked yet that you think should be asked?
    Mr. Ruzumna.
    MR. RUZUMNA: I would just like to ask for a clarification, would you have changed the proposed allocution but for your conversation with the government.
    MR. FINZI: I'd ask, Judge, it's clear that something mechanically happened between what was sent to the government and what was done. So something was typed up. Some minutes were made. I wonder on that front who made those changes or what he recalled about those changes made.
    I'd also ask if there are any notes, separate from privilege, in emails of a conversation so we can reconstruct what happened between what we're calling the approved version and the one delivered. Clearly changes were made.
    MR. RUZUMNA: The same point. Does he recall how that script that was read, who prepared that.
    THE COURT: I understand. Thank you.
    (Continued on next page)

J6JYAHU5
Page 2058

1   (In open court)
2       THE COURT: Sir, first of all, I do appreciate your
3   patience.  Second of all, I appreciate that this may be a
4   strange position to be in, to be questioned in this regard
5   about this matter.  Just a few follow-up questions based on
6   what we've talked about this afternoon.
7       Had you sent this allocution, had there been no
8   response to your email to Mr. Naftalis, was it your
9   contemplation that your client would have read at his plea
10  allocution the very thing that you sent?
11      MR. ROSENBERG: Yes, your Honor.
12      THE COURT: And so would you have changed the
13  allocution absent your conversation with the government?
14      MR. ROSENBERG: No, your Honor.
15      THE COURT: You had no plans of talking about it the
16  next day with any of your co-counsel or with your client?
17      MR. ROSENBERG: No, your Honor.
18      THE COURT: I believe you said to me earlier that your
19  client did in fact read from notes, written notes.
20      MR. ROSENBERG: Yes, your Honor.
21      THE COURT: And those notes I think you'd agree with
22  me, sir, are different from what was initially sent to
23  Mr. Naftalis.
24      MR. ROSENBERG: That is the case.
25      THE COURT: Somehow someone had to do the editing, and

J6JYAHU5
Page 2059

1   I don't know whether it was you or a colleague or Mr. Majidi or
2   something else.  I don't know how it came to be that the edits
3   were entered.
4       Do you recall, sir?
5       MR. ROSENBERG: I believe I said to your Honor that I
6   don't recall making any changes.
7       THE COURT: That's exactly right.  You did say that.
8       So would Mr. Linder have?
9       MR. ROSENBERG: I believe Mr. Linder would tell you
10  the same thing.
11      THE COURT: Okay.  Who are the people who could have
12  touched the document?
13      MR. ROSENBERG: I think it was between us and the
14  government.
15      THE COURT: You think the government might have sent
16  you something?  An edited allocution?
17      MR. ROSENBERG: I'm sure that if they had, you would
18  have it because we would have produced it in the course of
19  this.
20      THE COURT: Right.  Of course.
21      MR. ROSENBERG: We don't have it in our system.  We
22  don't have the document that Mr. Majidi read in our system.
23      THE COURT: It's not in your system?
24      MR. ROSENBERG: No.
25      THE COURT: Okay.

J6JYAHU5
Page 2060

1       MR. ROSENBERG: We've done -- I've had people more
2   capable than I do a thorough search of our system.
3       THE COURT: And those same very capable people did not
4   find any emails from the government attaching a proposed
5   allocution; correct?
6       MR. ROSENBERG: Correct, your Honor.
7       THE COURT: And had you had a document of that type or
8   emails of that type, may I expect that you would have saved
9   them somewhere on your system?
10      MR. ROSENBERG: That would ordinarily be the case.
11      THE COURT: And no such emails were found?
12      MR. ROSENBERG: That's correct.
13      THE COURT: So on the Clayman & Rosenberg side of the
14  house, it would have been you or Mr. Linder who made the
15  changes?
16      MR. ROSENBERG: It would have been.  I can't think --
17  no.  There is no one else who would have been involved in a way
18  such that they would have made the changes.  As I said, neither
19  of us recalls doing that.
20      THE COURT: And you'll excuse me if this is too
21  fundamental.
22      Mr. Majidi himself would not have been asked to make
23  those changes?
24      MR. ROSENBERG: No.
25      THE COURT: But I think you've anticipated one of my

J6JYAHU5
Page 2061

1   final questions, which is:  I know that materials were
2   produced.  I know that the draft allocution was produced with
3   the transmittal letter.
4       To the extent that you or your firm had anything else
5   responsive to this issue that was not privileged, has it been
6   produced?
7       MR. ROSENBERG: Yes.
8       THE COURT: I'll let you decide whether you want to
9   answer this or not.
10      Do you have privileged materials, sir, regarding all
11  of this?
12      MR. ROSENBERG: No.
13      THE COURT: Do you have --
14      MR. ROSENBERG: Let me say this.  I haven't thought
15  about that in detail, but my instinct is to say no.
16      THE COURT: Would you have taken notes of your
17  conversation with Mr. Naftalis?
18      MR. ROSENBERG: No.  I don't believe I would have.
19      THE COURT: Okay.  If you had, would you have produced
20  them in connection with the inquiry that was made here?
21      MR. ROSENBERG: Of course.
22      THE COURT: Sir, I believe that's all I have to ask
23  you.  I really do thank you for giving me insight I did not
24  have.
25      MR. FINZI: Judge, can I raise one other thing at

J6JYAHU5                                                          Page 2062

 1  sidebar?
 2       MR. RUZUMNA: I have a question too, your Honor.
 3       MR. ROSENBERG: Judge, I can just step out.
 4       THE COURT: You are very gracious to do that.  Thank
 5  you very much.  We'll come and get you momentarily.  Thank you.
 6       (Mr. Rosenberg not present)
 7       THE COURT: Mr. Ruzumna.
 8       MR. RUZUMNA: I think we need to ask a question does
 9  he recall receiving something on the day of the plea allocution
10  or the day before by means other than email.
11       THE COURT: Okay.  And then I think this has to end
12  because I think we're exhausting his memory.
13       Mr. Finzi.
14       MR. FINZI: Nothing more.
15       THE COURT: Did you have the same question?
16       MR. FINZI: Yes.
17       THE COURT: Great minds thinking alike.
18       Thank you very much.  If you could please bring in
19  Mr. Rosenberg.
20       (Mr. Rosenberg present)
21       THE COURT: Sir, thank you very much.  Just questions
22  that I overlooked asking.
23       After your communication with Mr. Naftalis -- that was
24  in an afternoon or an evening, sir?  The conversation.
25       MR. ROSENBERG: I believe the email said after 4:30.

J6JYAHU5                                                          Page 2063

 1  So I assume it was in the afternoon, late afternoon or evening.
 2       THE COURT: That evening, did you receive anything
 3  from Mr. Naftalis by any means other than email?  Text, phone
 4  call, personal delivery, anything of that nature, sir.
 5       MR. ROSENBERG: I don't know.  I certainly can't rule
 6  that out.  I simply don't have a recollection of it.  It's
 7  entirely possible.
 8       THE COURT: Would you remember it if you did?  I guess
 9  not.  You say you don't know.
10       MR. ROSENBERG: No.  I don't think I would.
11       THE COURT: On the day of the plea, on the day of the
12  plea, did you receive anything from the government by any means
13  other than email?
14       MR. ROSENBERG: I don't have a recollection of that.
15       THE COURT: Okay.  Just so that I'm clear, your files,
16  your firm's files currently, do not have a copy of the final
17  allocution?
18       MR. ROSENBERG: That's what I understand.
19       THE COURT: All right.  Thank you, sir.  Those are all
20  the questions I have for you, sir.  Thank you very much.
21       I don't know that there is anything else to discuss
22  this evening.  Perhaps you want to think about it.
23       MR. RUZUMNA: Your Honor, I think we can talk about it
24  tomorrow.
25       THE COURT: Closer to a microphone, please.  Thank

J6JYAHU5                                                          Page 2064

 1  you.
 2       MR. RUZUMNA: In light of the testimony -- not the
 3  testimony.
 4       THE COURT: The statements.  Yes.
 5       MR. RUZUMNA: -- from Mr. Rosenberg, it does sound
 6  like the draft allocution, what your Honor referred to as the
 7  "approved allocution" was intended to be read into the record.
 8  It would have been a sworn statement.  It was understood as
 9  such.
10       We certainly would like to use that with respect to
11  Mr. Majidi in his cross.  So we would ask that that be
12  permitted to be used as affirmative evidence.  We do not have
13  to get into this incident with -- I won't call it an
14  "incident."
15       THE COURT: It's not an "incident," sir.
16       MR. RUZUMNA: We don't have to get into the
17  back-and-forth with the government at all, but we do think that
18  that statement is the equivalent of what Mr. Majidi would have
19  said in his sworn plea allocution.
20       We'd like to use it as such because it does have
21  relevance to my client.  And as your Honor has, I believe,
22  noted, it's significantly different in certain respects.
23       THE COURT: I did issue an order on this previously.
24  I'm going to look at my order.  I presume you're renewing all
25  of the arguments that you've made, and I suppose if you want to

J6JYAHU5                                                          Page 2065

 1  talk about them, I fear we will not be done with Mr. Majidi
 2  tomorrow.
 3       MR. RUZUMNA: We certainly are not.
 4       THE COURT: If you want to reflect tonight and talk to
 5  me tomorrow afternoon, that's fine.  I have the baseline -- I'm
 6  calling it that for lack of a better term -- of an order that I
 7  previously issued on this point, but I want to think about it
 8  some more.
 9       MR. RUZUMNA: I think the order does address these
10  issues.  I think we now have the benefit of additional
11  information.
12       THE COURT: That's fine.  I understand that.  Exactly.
13  I want to address that, and I want to give the government the
14  same opportunity, and that's by the end of the day tomorrow to
15  communicate that.  If you'd like to give them to me in writing,
16  I won't stop you.  But I imagine you have other things like
17  shortening up your examinations.  Yes.
18       MR. NICHOLAS: Your Honor, we're happy to address it
19  orally tomorrow.  We do disagree with Mr. Ruzumna in terms of
20  whether the Court's order needs to be revisited based on
21  Mr. Rosenberg's statements, but we can address it tomorrow.  No
22  need to go into it right now.
23       THE COURT: While I have you standing, sir, did the
24  government send anything to Mr. Rosenberg?
25       MR. NICHOLAS: Your Honor, I have no recollection of

Case 1:18-cr-00328-KPF   Document 428-15   Filed 02/12/21   Page 7 of 7
UNITED STATES OF AMERICA, V
ANILESH AHUJA and JEREMY SHOR,

CORRECTED
June 19, 2019

J6JYAHU5    Page 2066

1   that.
2       MR. NAFTALIS: No.
3       MR. NICHOLAS: I do just want to make clear -- this is
4   just me speaking -- I don't think there would be anything
5   improper -- I don't think there is anything improper about
6   discussing with a defense lawyer an allocution.
7       THE COURT: Sir, I'm not suggesting there is.
8       MR. NICHOLAS: Okay.
9       THE COURT: A thing that is different now in this
10  minute than there was before I spoke with Mr. Majidi's counsel
11  is that Mr. Naftalis had a recollection -- I won't say a
12  "strong recollection," but a recollection of a conversation,
13  and did not recall -- I wouldn't expect him to recall --
14  transmitting anything.
15      And Mr. Rosenberg suggested that maybe there was a
16  possibility that the government handled the edits. So I'm
17  allowed to ask whether they handled the edits, and I'm being
18  told they didn't.
19      MR. NICHOLAS: Of course. I don't mean to kind of put
20  restrictions on the Court's inquiry, not that I even could. I
21  just want to make clear that I think the area that's being
22  examined is not, to use someone else's word, "nefarious."
23      THE COURT: The word is mine. By using it, I wasn't
24  suggesting it either. I have a better understanding of what
25  happened. I want the parties to think about whether they want

J6JYAHU5    Page 2067

1   to make additional arguments to me about what happened or
2   whether they want to stand on what has been said previously,
3   and I'll decide.
4       MR. NICHOLAS: Thank you, Judge.
5       THE COURT: Anything else from anyone?
6       MR. FINZI: No, your Honor.
7       THE COURT: Thank you all very much.
8       (Adjourned)

Page 2068

INDEX OF EXAMINATION

Examination of:                                    Page
JAMES NIMBERG
Cross By Mr. Finzi . . . . . . . . . . . . . . .1867
Cross By Mr. Ruzumna . . . . . . . . . . . . . .1894
Redirect By Mr. Naftalis . . . . . . . . . . . .1987
MICHAEL YANNELL
Direct By Mr. Nicholas . . . . . . . . . . . . .1991
Cross By Mr. Del Monaco . . . . . . . . . . . .2023

GOVERNMENT EXHIBITS

Exhibit No.                                    Received
377   . . . . . . . . . . . . . . . . . . . . .1959
445   . . . . . . . . . . . . . . . . . . . . .2005
446   . . . . . . . . . . . . . . . . . . . . .2020
447   . . . . . . . . . . . . . . . . . . . . .2019
870-L . . . . . . . . . . . . . . . . . . . . .1925
870-O . . . . . . . . . . . . . . . . . . . . .1952

DEFENDANT EXHIBITS

Exhibit No.                                    Received
1119  . . . . . . . . . . . . . . . . . . . . .1881
7179  . . . . . . . . . . . . . . . . . . . . .1868
7186  . . . . . . . . . . . . . . . . . . . . .1877
7191  . . . . . . . . . . . . . . . . . . . . .1870
7191A . . . . . . . . . . . . . . . . . . . . .1873
7334  . . . . . . . . . . . . . . . . . . . . .1875
7501  . . . . . . . . . . . . . . . . . . . . .1943
7502  . . . . . . . . . . . . . . . . . . . . .1945